454 So.2d 807 (1984)
Danny A. DAUZAT
v.
GREGORY & COOK, INC. and Gray and Company, Inc.
No. 84-C-0039.
Supreme Court of Louisiana.
June 25, 1984.
Rehearing Denied September 14, 1984.
*808 John Saunders, Saunders, Vidrine & Walker, Ville Platte, for applicant.
Gregory J. Laborde, Hal J. Broussard, Susan Daigle, Andrus, Preis & Kraft, Lafayette, for respondents.
CALOGERO, Justice.
This is a worker's compensation case. Plaintiff is a pipeline construction laborer, occasionally a straw boss (or sub-foreman). This litigation arises out of an accident which occurred when he worked for Gregory and Cook, Inc., a pipeline contractor. On May 31, 1980, he was working on a road boring machine. While guiding a winch line he was thrown off balance, fell, and injured his right knee.
Ultimately he filed a workmen's compensation suit seeking benefits for partial permanent disability.[1]
*809 The trial judge ruled in plaintiff's favor, awarding him benefits for partial permanent disability, along with penalties and attorney's fees. The Court of Appeal reversed the judgment and dismissed his suit. 440 So.2d 989 (La.App. 3rd Cir.1983). We granted writs on his application. 445 So.2d 430 (La.1984).
At trial plaintiff and his wife testified. He presented the deposition testimony of Dr. Gregory Savoy. He presented no other witnesses. Only two defense witnesses were presented. One witness, a representative of the employer's insurer, testified with respect to the insurer's evaluation of the reported injury and their determination that plaintiff was not entitled to compensation benefits other than the medical expenses which had been incurred.[2] The other defense witness was an employee of Ashy Enterprises, a company plaintiff worked for subsequent to his employment with Gregory and Cook, Inc. This witness testified in relation to plaintiff's job as a laborer with Ashy Enterprises. He testified that in the three weeks plaintiff worked for that company, he performed his work properly. Defendant presented no medical or any other witness or witnesses. Thus plaintiff's, his wife's and his doctor's testimony were essentially uncontroverted.
The record reveals the following.
Plaintiff is thirty-five years old, married and the father of five children. He has no previous history of injury to his right knee. His entire work history is in pipeline construction. He is a laborer although on occasion he has had additional responsibility as a straw boss, essentially a sub-foreman.
After the accident and injury to his knee plaintiff continued working the rest of the day, although in pain. The following day his condition was worse, requiring that he use crutches. A few days later, on June 3, 1980, with the knee swollen and painful, he went to see Dr. Gregory Savoy.
Dr. Savoy diagnosed a knee strain, prescribed anti-inflammatory and pain medication and recommended bed rest with elevation of the leg. Plaintiff followed the doctor's advice and returned to work five days later. On June 18, 1980 he returned for a follow-up visit. By that time the swelling was gone and he had full range of motion in the knee.
Plaintiff returned to the doctor again on August 4, 1981. At that time he complained about the same knee, which had a tendency to give out when he walked, and was still causing him problems with pain and swelling. Dr. Savoy referred plaintiff to physical therapy.[3]
Plaintiff's last visit to the doctor, prior to trial, was on February 5, 1982. At that time he complained of constant pain in the knee accompanied by swelling. Dr. Savoy again prescribed anti-inflammatory and pain medication.
Dr. Savoy, the treating physician and only physician involved in the case, testified in his deposition that the problems plaintiff experienced with his knee were a direct result of the work related accident.[4] *810 Dr. Savoy was of the opinion that the knee would trouble plaintiff the rest of his life and he would probably develop arthritis. As far as limitations, he stated that plaintiff is
not going to be as mobile as he was. He's not going to be able to assume some of the wierd positions that people who work and do heavy labor generally have to assume in lifting and straining. He's not able to jump from one height to the ground even though it's only about two to three feet at the most, because of the potential for this knee to become reinjured. His actual mobility of the joint did not seem to be impaired when he was first injured, however, I'm sure the joint will eventually begin to give him trouble.
The plaintiff testified that his knee hurts him all the time and that standing and working in mud or putting weight on the knee, makes it swell. He stated that because of the swelling his pants leg would have to be cut to allow room for the swelling. The knee had a tendency to swell more and become tender as the work day wore on. Plaintiff testified that in every job he had since the injury, he worked in substantial pain which limited his physical activities. He was unable to put much weight on his bad leg. In order to help alleviate the pain and swelling, he would elevate his leg and put either ice packs or a heating pad on the knee. He stated that, despite the pain in his knee, he went back to work because of economic necessity.
Plaintiff's wife testified about the swelling and the fact that his pants leg had to be split to accommodate the swelling. She stated that she had seen his leg give out on him when walking on uneven ground. She further testified that elevating the bad leg and staying off of it helped him more than anything.
The trial judge found that plaintiff is partially permanently disabled within the meaning of La.R.S. 23:1221(3), because he can not perform all of the duties customarily engaged in when injured or duties of the same or similar character, nature or description.
The trial judge found that plaintiff "does suffer pain at irregular intervals." (This is consistent with plaintiff's testimony, that his knee bothers him more as the work day progresses.) The trial judge also found that plaintiff "will probably suffer substantial pain when doing heavy or laborous work, such as a laborer on a board run. He will be limited in his duties since he will not be able to squat, walk on uneven terrain or lift heavy objects." The trial judge placed heavy reliance on plaintiff's work history and his testimony that the reason he continued to work was because of the needs of his family.
The Court of Appeal reversed the trial court. They were impressed by several factors: Plaintiff never lost a day of work because of the injury. Plaintiff performed his jobs satisfactorily and never refused a job offered through the union. He never told either the union or an employer about his injury. He made more money on subsequent jobs than he was getting at the time of his injury. He never quit a job due to his injury and he never missed a day of work. At the time of trial, although he wasn't working, he was available for work. The Court of Appeal was also influenced by the fact that plaintiff did not present any co-workers at trial to substantiate his testimony.
Although the record supports the above factors there are other important considerations which should have been taken into account. Plaintiff only actually worked about ten months in the twenty-eight months which had elapsed between the time of the injury and the trial. His testimony indicates that in just about all of those jobs he relied on the use of his hands to "take care" of him. He stated that he has to "babysit" the injured knee to keep it from hurting. The testimony of both plaintiff and his wife supports the fact that he was forced to work because of economic necessity. Finally, and most important, *811 plaintiff testified that he experienced substantial pain while working in all of the jobs which he held since the accident.
On this matter of proving the substantiality of pain to support a compensation claim, we said in Lucas v. Ins. Co. of North America, 342 So.2d 591, 596-97, 595 (La.1977),
Whether pain is substantial enough to be disabling, however, is ordinarily not a medical question but an issue to be decided by the trier of fact on the basis of the preponderance of the medical and lay evidence. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (La.1975); Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972).
In Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367, 369 (La.1980), we stated:
It is well settled that:
* * * * * *
"The claimant who alleges disability because of inability to perform his usual and regular duties without substantial or appreciable pain must establish the existence of that condition to a reasonable certainty and by a fair preponderance of testimony. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1964); Johnson v. R.P. Farnsworth and Company, 186 So.2d 405 (La.App. 1 Cir. 1966)." Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923, 925 (La.App. 3d Cir. 1973).
We find that Dauzat has proven that his pain is substantial enough to be disabling by a preponderance of medical and lay evidence.
The record does support plaintiff's complaints of substantial pain. Plaintiff was seen by Dr. Savoy a total of four times after the accident. His first two visits were shortly after the accident. His third visit, on August 14, 1981, was fourteen months after the accident. His fourth visit, on February 5, 1982, was twenty months after the injury. On all of these visits plaintiff detailed for Dr. Savoy the problems he was experiencing with his injured knee, i.e., pain, swelling and the knee giving out. It is true that at his deposition Dr. Savoy was never asked to express an opinion about the degree of pain plaintiff was experiencing. However, it is significant and noteworthy that on his first and last visits, Dr. Savoy prescribed a strong pain medication as well as anti-inflammatory medication.
The fact that plaintiff experienced swelling in his knee is substantiated by his wife's testimony that his pants leg had to be cut to allow for swelling and that he had to elevate his leg and use hot or cold compresses on the knee. Plaintiff's wife also testified that she had seen his knee give out on him at times.
We have determined that plaintiff has sustained his burden of proving that he is unable to perform his usual and regular duties without substantial or appreciable pain. The evidence presented by plaintiff, deposition testimony of his doctor, his wife's testimony and the plaintiff's own testimony, is convincing. Defendants presented no contradictory evidence.
That plaintiff continued to work in pipeline construction, a factor which apparently influenced the Court of Appeal in reversing the trial court, is not determinative of the issue whether he is entitled to partial permanent disability benefits. La. R.S. 23:1221(3)[5] does not require a partial *812 disability claimant to prove loss of employment because of a work-related injury. For instance in Naquin v. Uniroyal, Inc., 405 So.2d 525, 527 (La.1981), we stated:
The statute clearly provides that an employee is eligible for compensation for a partially disabling work-related injury regardless of whether his employment continues; only the amount of compensation due may be affected by wages actually earned after the injury.
In fact plaintiff has worked in substantial pain at every opportunity because of economic necessity. That is to his credit. The consequence of being able to work under La.R.S. 23:1221(3) is not a denial of benefits. Rather the worker, classified as partially permanently disabled, will be entitled to "sixty-six and two-thirds per centum the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages..."
As we said in Dusang at 389 So.2d at 272:
if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. Such classification will protect him in any work in which he earns less than he did before his injury.
We next turn to the question of penalties and attorney's fees. The trial court found that defendant's failure to provide plaintiff compensation benefits was unreasonable and arbitrary. The appellate court did not have to address this question because they reversed the trial court finding that plaintiff is entitled to benefits. Because we have reinstated the trial court judgment we are faced with the issue.
The circumstances of this case convince us that the trial court was correct in determining that plaintiff's employer's failure to pay benefits was arbitrary. La.R.S. 23:1201.2. (Acts 1958, No. 43, § 1)[6]

*813 Decree

For the foregoing reasons the judgment of the Court of Appeal is reversed and the judgment of the trial court reinstated.
JUDGMENT OF COURT OF APPEAL REVERSED; JUDGMENT OF TRIAL COURT REINSTATED.
LEMMON, J., concurs.
MARCUS and BLANCHE, JJ., concur in part and dissent in part and assign reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the majority opinion except for the award of penalties and attorney fees. Accordingly, I concur in part and dissent in part.
BLANCHE, Justice (dissenting in part and concurring in part).
This writer can live with the finding that the plaintiff worked in substantial pain even though the contrary findings of the Court of Appeal are equally supported in the record. Nevertheless, it seems to add insult to injury to award penalties and attorney's fees in the absence of any evidence that the employer or anyone else other than plaintiff's wife knew that plaintiff was working in pain.
I concur in the majority opinion's award of compensation but respectfully dissent from the award of penalties and attorney's fees in the absence of any evidence of an arbitrary failure to pay compensation.
NOTES
[1] Plaintiff initially sought benefits for total permanent disability. This claim was defeated, however, by an exception of prescription, since more than a year had elapsed when the suit was filed from the date of the injury. La.R.S. 23:1209. La.R.S. 23:1209 was amended by Acts 1975, No. 583 § 7 to provide a three year prescriptive period for partial disability claims. Because suit was filed within that period of time, the claim for partial permanent disability had not prescribed.
[2] This testimony was, no doubt, offered by defendant in order to defeat plaintiff's claim for penalties and attorney's fees.
[3] Dr. Savoy testified that there are several things which can cause the knee to give out, "but, more often than not, the knee giving out is usually a result of a ligament tear, which isbecomes chronic, and in certain positions the knee becomes unstable and tends to want to slip out from under the patient when they're walking or if they're jumping from a small height to another, the knee will tend to give out once the pressure is placed on it."
[4] Defendant suggested during oral argument that plaintiff suffered a re-injury to his knee as a result of tripping or falling in a hole in his back yard. The Court of Appeal states that there was "evidence" of such an accident shortly before plaintiff's August 4, 1981, visit to Dr. Savoy. 440 So.2d at 992.

We are constrained to disagree with this interpretation of the evidence. At trial plaintiff testified that the hole in the yard did not cause him to fall. Rather, while he was doing some work in his yard his leg began hurting him. As he was trying to walk in the yard he was limping, and when he reached the spot where the ground was uneven his leg gave out on him.
[5] Plaintiff's injury occurred prior to numerous enactments of and amendments to the Louisiana Worker's Compensation Law. Acts 1983, 1st Ex.Sess., No. 1 § 1. Thus, his claim for benefits falls under the law as it existed at the time of the accident. Prior to the 1983 amendments, La.R.S. 23:1221(3) provided:

For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same for a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977, provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3).
[6] In his written reasons for judgment the trial court stated:

The Court, in considering all of the evidence, even including testimony of the insurance company's claims adjuster, finds that the defendant in fact did very little to ascertain whether or not plaintiff was entitled to workmen's compensation benefits. It is indeed difficult for this Court to understand why this company never did have the plaintiff examined by an orthopedic surgeon to determine whether or not the plaintiff was disabled with a chronic knee condition as found by Dr. Savoy. The company should have realized that the plaintiff was entitled to some compensation benefits after being notified of the injury by the plaintiff's attorney of the claim. (sic) Therefore, their failure to provide plaintiff with these benefits was unreasonable and arbitrary, and as such, they are liable to plaintiff for attorney's fees and penalties as provided for by law. The Court will therefore award the plaintiff the sum of $5,000.00, as attorney's fees, and 12% penalties, together with legal interest thereon on each and every delinquent workmen's compensation weekly benefit.