SCHOTT, Judge.
In this worker’s compensation case for an ankle injury she shstained on March 11, 1981, plaintiff was awarded $163 per week for one hundred weeks pursuant to LSA-R.S. 23:1221(4)(p) based upon usefulness of a physical function being seriously permanently impaired. Both parties have appealed with defendants, the employer and its insurer, contending that their obligation to plaintiff was limited to benefits for a ten percent disability of the leg under R.S. 23:1221(4)(o) and plaintiff claiming entitlement to compensation for permanent partial disability at $163 per week for four hundred and fifty weeks pursuant to R.S. 23:1221(3). These issues are essentially factual as to whether the trial court erred manifestly in his decision. In addition, plaintiff seeks statutory penalties and attorney fees.
At the time of her injury plaintiff was twenty years of age and employed as a millwright. She was initially treated by Dr. R.Y. Hamsa, an orthopedist, who surgically repaired and reconstructed tom lateral ligaments in her right ankle on March 24. According to Dr. Hamsa she recovered satisfactorily and in June was discharged to light work activity for one month and was expected to resume full work activity without limitation thereafter even though she had “impairment of about 15 percent of the ankle joint as a while ...” In a subsequent report to defendant, Dr. Hamsa stated that he had extended her disability for two to three months, i.e. until August, because she was “timid” and concerned about her ankle as she continued to guard it.
In November, 1981 plaintiff consulted Dr. Stuart Phillips, an orthopedist, complaining of ankle irratability and pain and subjective fears that her ankle would give way. After examination, Dr. Phillips found decreased sensation and atrophy and he expected she would have a partial disability of fifteen to twenty percent loss of function of the extremity. He suggested she return to work and return to him later.
In June, 1982 she returned with “minimal pain.” The physician diagnosed traumatic arthritis, prescribed Naprosyn, and told her to return in six weeks. She did so in August and reported “the medicine had worked and relieved the pain.” He advised her to discontinue with the medicine, resume full activity, and return in six weeks. When she returned in October the symptoms had returned and the ankle had become swollen. He put her back on the medication and suggested that she return to him periodically.
At the time, in October 1982, Dr. Phillips rated her with twenty percent loss of function of the ankle or ten percent of the extremity. When he saw her in January and March, 1983 he reported that she was taking the medication as needed for the pain and “as long as she didn’t work the pain was okay.” In December, 1983 he did *114 a “formal evaluation on her” and concluded she had a twenty percent functional impairment of the extremity. He thought she could not walk on unlevel ground, climb stairs, or squat for long periods of time due to a significant weakness of the ankle. Finally, he re-evaluated her in October, 1984 shortly before trial and reached the same conclusions.
After her discharge by Dr. Hamsa in August, 1981 plaintiff resumed classes in her millwright apprenticeship program which she attended until the end of the year. She returned to work in January, 1982 and continued working that entire year working not less than 48 hours in any month and well over 200 hours in each of the months of March, June and September. She testified that she never missed any work because of her ankle after being discharged by Dr. Hamsa; she could not remember any job she was called upon to do that she could not; she had pain in her ankle only after heavy exertion; and she had stopped taking medicine for the ankle because it was getting better. On cross-examination she stated that she retired from the union and stopped working as a millwright because she got married in March 1983 although she qualified this on redirect examination by stating that the other reason she retired was because she didn’t like to ask her co-workers to help her with tasks she couldn’t perform because of her ankle problem.
Anthony J. Cucchero, business representative and financial secretary of the millwright local union, testified that plaintiff had become an apprentice with the union in 1978 and completed her apprenticeship in June 1982, about fifteen months after her accident, and she was awarded a commendation for being an outstanding millwright apprentice. He produced a letter dated August 12, 1982 from the union’s apprenticeship coordinator certifying that plaintiff had been promoted to journeyman millwright on July 7, 1982. It was his understanding that she withdrew from the union in May, 1983 because she was getting married.
In arguing that the trial court should have limited plaintiff to benefits for a ten percent disability of the leg, defendants rely exclusively on the testimony of Dr. Hamsa. Hamsa was specifically asked whether he disagreed with Phillips’ statement that she would have difficulty walking on unlevel ground as of 1983, that she could not climb stairs, and could not work in a squatting position, and he replied as follows:
“There is no way that I can be put in a position to give significant lip service to that. I have not seen and evaluated the patient. I would be absolutely overwhelmed to find the facts as you present them to be true looking at these X-rays and knowing what I have clinically, but without the realm of understanding it could be a possibility. I would think that to be the most remote possibility in the world, but under those circumstances I certainly cannot make a major decision affecting a particular situation “forever” regarding a person’s activities without evaluating the patient. Now, if there is not significant swelling in this ankle— well, there are other considerations. I just looked at the chart when you were asking about medicines and I remembered that this patient was somewhat portly. And I am concerned because she had one flare, F-L-A-R-E, during the course of her treatment where she was doing very well and then suddenly was sore. I put her on Butazolidin and it was a miracle. Therefore, if she had soreness off and on I think that this patient should be worked up for gouty, G-O-UT-Y, or a gouty tendency. If she has even a mildly elevated uric acid then it would explain why she might have some chronic intermittent tenderness.”
Although this opinion is quite definite and emphatic the fact remains that Hamsa had not seen the patient since September, 1981 when he gave his testimony in November, 1984 and Dr. Phillips had seen her seven times during this period. It seems that the trial court attached some weight to Dr. Phillips’ opinion that she had *115 a greater degree of disability than Dr. Hamsa found and that she did experience a flare-up of arthritis when she discontinued her medication as opposed to Dr. Hamsa’s unsupported theory that she was suffering from gout. The record supports the trial court’s ultimate conclusion that the usefulness of her leg was seriously permanently impaired and that she was not merely disabled to the extent of ten percent of the leg.
On the other hand we cannot conclude that the trial court committed manifest error in failing to find plaintiff permanently partially disabled on the basis of the evidence she presented. Dr. Phillips admitted that he was unaware that she had worked throughout 1982 while he was seeing her. This fact belies her subjective expressions of concern about falling and guarding her weakened ankle. Furthermore, the trial judge could easily and correctly have concluded that she could have continued working but she quit only because she got married.
Dauzat v. Gregory & Cook, Inc., 454 So.2d 807 (La.1984) relied upon by plaintiff is clearly distinguishable. There the treating physician and the only physician involved in the case supported the testimony of plaintiff and his wife as to great residual pain he was left with. The trial court had found that the plaintiff would suffer substantial pain if he returned to his duties. The court of appeal reversed and the supreme court, in reinstating the trial court’s award, repeated its previous pronouncements that the issue of whether pain is substantial enough to be disabling is to be decided by the trier of fact. In the instant case the trial court resolved this issue against plaintiff concluding that the medical and lay evidence did not preponderate in her favor that she can work only in substantial pain as a result of her injury. We cannot conclude that the trial court erred manifestly in reaching this conclusion.
Plaintiff also seeks to impose penalties on defendant for failing to pay her the compensation benefits ultimately found to be due her and for failing to make timely payments for the medical expenses she incurred with Dr. Phillips and her travel expenses she incurred seeing Dr. Phillips and Dr. Hamsa.
As for defendant’s failure to pay benefits greater than the amounts due for a ten percent disability of the leg, we are not persuaded that this decision was arbitrary, capricious, or without probable cause. Plaintiff was paid compensation until August 9, 1981 because Dr. Hamsa discharged her on August 10. In October Hamsa again advised defendant that she was “capable of returning to work activity” and that no further treatment was indicated. He stated that she could “seek another opinion” if she continued to doubt his. Plaintiff would have us conclude from this that defendant knew she required further treatment. However, defendant’s adjuster did not interpret the letter to mean that. This adjuster testified that they regarded Dr. Hamsa as plaintiff’s chosen treating physician who was telling them she was all right and they did not accept Dr. Phillips’ opinion over Hamsa’s that further treatment was necessary. Termination under these circumstances was not arbitrary. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). But the next question is whether failure to reinstate benefits was arbitrary once defendant received Dr. Phillips’ reports advising she was still having difficulty as in the Johnson case. Once the case was tried defendant found it was responsible for greater benefits than Dr. Hamsa’s reports warranted. But this does not necessarily translate its earlier reliance on Dr. Hamsa’s opinion and disregard for Dr. Phillips’ into an arbitrary decision on its part. This was a close case in which defendants asserted a good faith defense and could only be decided by the trial judge after hearing all the evidence. Defendants’ decision to go to court and present their evidence was reasonable under the facts of this case. The mere fact that they lost — albeit partially — does not automatically subject them to penalties. R.S. 22:658; R.S. 23:1201.2; Chiasson v. *116 Lafourche Parish Council, 449 So.2d 110 (La.App. 1st Cir.1984).
The same reasoning applies to plaintiffs argument that she is entitled to penalties because, of defendant’s failure to pay Dr. Phillips’ medical expenses. Only after the trial judge concluded that plaintiff was disabled beyond that which Dr. Hamsa supported was there any entitlement to recovery for expenses incurred with Dr. Phillips. It was not arbitrary for the defendant not to pay these expenses because it was under a reasonable impression that they were unnecessary. Defendant lost the case and was held to owe the expenses, but losing does not necessarily prove defendant’s conduct in going to court was arbitrary.
Finally, plaintiff contends defendant was arbitrary in failing to pay her travel expenses incurred in going to Dr. Hamsa’s office, but her position is not supported by the record. Defendant’s adjuster testified that after compensation payments were made based upon Dr. Hamsa’s findings she learned that plaintiff was over paid and she charged the excess payments to the travel expenses. Thus, the record does not establish defendant’s arbitrary refusal to pay these expenses.
In conclusion, the trial judge after weighing the evidence on the question of plaintiff’s entitlement to penalties, found that defendant’s failure to pay greater benefits than it did and to pay the expenses plaintiff incurred with Dr. Phillips was not arbitrary, capricious, or without probable cause. This finding is not clearly wrong.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.