593 So.2d 854 (1992)
Richard Lynn LONG, Plaintiff-Appellant,
v.
MANVILLE FOREST PRODUCTS CORPORATION, Defendant-Appellee.
No. 23114-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
*855 Bruscato, Loomis & Street, Monroe by James L. Braddock, for plaintiff-appellant.
Hudson, Potts & Bernstein, Monroe by Brady D. King, II, for defendant-appellee.
Before MARVIN, C.J., and HIGHTOWER and VICTORY, JJ.
MARVIN, Chief Judge.
Following a trial on the merits in this worker's compensation action after we reversed in part a summary judgment denying temporary total benefits and remanded the case in 1989, the claimant, Richard Long, appeals a judgment dismissing his demands. See Long v. Manville Forest Products Corp., 554 So.2d 181 (La.App. 2d Cir.1989), hereafter Long.
Long, a general maintenance mechanic at Manville's paper mill, was paid temporary total disability benefits for about 20 months following a 1985 accident that fractured several bones in his foot and stripped the skin from his left ankle and heel. His weekly benefits terminated in September 1986, when he returned to his job without medical restrictions. Except for about a month ending July 17, 1989, Long continued working in his job through the trial on the merits in 1990.
Long contends he is entitled to w.c. benefits because he has been working in substantial pain and only out of economic necessity since September 1986. In Long we held working-in-pain then remained a viable basis for an award of temporary total benefits even after the 1983 amendments to the w.c. law. Now see LRS 23:1221(1)(b), enacted by Act No. 454 of 1989.
The trial court disagreed with Long's factual contention, finding that Long proved that his pain was only "slight to moderate," and not substantial or disabling. The record supports the trial court's conclusion.
Alternatively, Long, who has earned higher wages after his injury, seeks an award for supplemental earnings benefits for any future period in which he does not earn more than 90 percent of his pre-injury wages.
We affirm.

FACTS
Long's accident occurred January 23, 1985, when he was about 34 years old. Surgical treatment left the injured area weaker and more tender than the rest of Long's foot. The bone fractures damaged several joints in Long's foot, causing recurring pain and stiffness in his foot and increasing the likelihood that he will develop degenerative arthritis as he ages.
Long's orthopedic doctor, Dr. Nawas, released him to return to work in September 1986, after finding that Long had achieved "functional recovery" and should be able to perform his job duties, notwithstanding that he still had some foot pain.
Long has worked full-time for Manville, performing his pre-accident duties, since September 1986, except for a one-month period from June 13-July 17, 1989, during which Long had two pinched nerves, called Morton's neuromas, surgically removed from his left foot. Long first reported a burning sensation or pain in the area of the neuromas to Dr. Nawas on May 26, 1989. Dr. Nawas opined that the neuromas were related to Long's work injury. Manville paid Long's medical expenses and weekly *856 benefits during the month of work he missed in 1989.
Long sued in 1987, alleging that he was working in substantial pain and seeking "permanent disability and/or supplemental earnings benefits." Manville supported its 1989 motion for summary judgment by showing that Long had been performing his pre-accident duties on a full-time basis and earning higher wages than before the accident.
On the appeal of the trial court's summary judgment, we found that Long was not entitled to permanent total disability benefits because the working in pain doctrine was statutorily excluded as a basis for permanent total disability claims in the 1983 w.c. revisions. We also found that "no supplemental earnings benefits are awardable," because Manville's affidavit showed that Long, after his return to work, earned more than 90 percent of his 1985 wages. Finally, we found that the working in pain doctrine remained viable as to Long's claim for temporary total disability benefits, but that this claim presented material factual issues precluding summary judgment.
Long is a member of a 14-man work crew that maintains and repairs a paper machine which is about 1500 feet long and about 25 feet high. He is required to sit, stand, bend, squat, climb, and lift heavy objects. He carries a tool pouch weighing 25-50 pounds.
Long testified that he has had "constant" pain in his left foot since he returned to work in September 1986. He said the pain increases with squatting, climbing, or prolonged standing. Long testified that he would sometimes get other workers to help him with his duties. He did not call those workers at trial. Long also said he sometimes soaks his foot in warm water and has it massaged at home after work.
Long said he was "not free of pain" when he returned to work in September 1986, but did not describe the severity of his pain. Long said he asked Dr. Nawas to release him to return to work because he needed the income to support his wife and four children.
Dr. Nawas testified that he released Long to return to work in September 1986 because Long
... had what we call "functional recovery" where he was able to use his foot and was able to stand the stress of his job at Manville ... which required him to lift things, to drive forklifts, and to deal with paper products and paper finishings....
The most common residual problem in a situation like this is post-traumatic degenerative arthritis in ... the middle part of his foot....
Q. What types of restrictions or limitations will that place upon Mr. Long with respect to his ability to use his foot and maintain his employment?
Well, at the present time [April 1990] I wouldn't put any restrictions on him, as long as he is capable of doing his work. He might have some aches or some stiffness in his foot.... But as far as somebody who is thirty-four or thirty-seven years old, quite active, healthy, I think he should be able to function quite well in spite that he would have some pain, some discomfort in his foot. And you hope that his supervisor will be understanding enough to let him rest occasionally when he complains, because he has genuine reason to be sympathetic with him.
Q. Okay. I understand that you don't particularly want to call it maximum medical recovery, his state of recovery [in] September of '86, but in your opinion, he had progressed enough to where he could return to the type of work that he had been employed in before the accident. Is that correct?
That's correct.
Q. ... If you can, Doctor, can you quantify that pain [in September 1986]? I think a slight to moderate.
Q. And would it be exacerbated by movement or activity?
That's correct.
After working for about two months, Long returned to Dr. Nawas in November *857 1986, complaining of "pain in his foot, especially after prolonged standing at work and when he wears boots. He feels much more comfortable if he is wearing sneakers or tennis shoes. He is given a note to be allowed to wear comfortable shoes at work. He is to return [as needed]." After receiving the note from Dr. Nawas, Manville allowed Long to wear tennis shoes while working, contrary to Manville's general policy requiring safety shoes.
Long next saw Dr. Nawas in January 1987. He reported recurrent swelling in his foot, "especially after prolonged standing and working all day." Dr. Nawas advised Long to use an elastic bandage to support his ankle, to rest his foot whenever possible, and to elevate his foot when it started to swell.
Long's next visit to Dr. Nawas in November 1987 was prompted by pain and stiffness in his foot, and by bursitis in his hip, a condition unrelated to his work accident. Dr. Nawas gave Long an injection for the bursitis and told him to return as needed.
In December 1987, Long reported to Dr. Nawas that he had pain in the tip of his second toe, which Dr. Nawas attributed to weight-shifting because of the foot injury. Dr. Nawas advised Long to "wear lacing boots of good quality" in a larger size than he had been wearing, and to return as needed. In his report of this visit, Dr. Nawas assessed Long with a 20 percent permanent partial impairment of the function of his foot, based on the probability that he will develop post-traumatic degenerative arthritis, which Dr. Nawas said could take "many, many years."
Long did not see Dr. Nawas again for almost 1½ years. On May 26, 1989, Long reported a burning pain, numbness and tingling between the second and third and the third and fourth toes of his left foot. Dr. Nawas diagnosed two pinched nerves, or Morton's neuromas, which he described as a tumor or thickening of the nerves between Long's toes, caused by increased pressure on the nerves from a change in the structure or the mechanics of the foot. Dr. Nawas opined that the neuromas were more probably than not related to Long's work injury. He said the neuromas can cause a sharp, severe, burning pain, which is much harder to tolerate than the "dull ache" associated with damaged joints.
Dr. Nawas surgically removed the neuromas on June 13, 1989. On July 10 he released Long to return to work. Manville paid Long weekly benefits from June 13-July 17, 1989, when Long resumed working in the maintenance crew. Dr. Nawas noted on the July 10 visit that most of the burning pain in Long's toes had disappeared. Dr. Nawas did not expect the neuromas to recur or to cause any additional impairment of Long's foot.
At trial in September 1990, Long said he still had pain between his toes, as well as the pain he had before he developed the neuromas. He did not return to Dr. Nawas after July 10, 1989. Long testified that Dr. Nawas gave him "pain shots" after he returned to work in September 1986. The doctor's progress notes mention only one injection, for bursitis in Long's hip, which was not related to his foot injury. Long testified that Dr. Nawas prescribed pain medication "one time," but said he did not take it regularly. Long's wife testified that Dr. Nawas gave Long shots. She did not know if Dr. Nawas prescribed any pain medication for Long to take at home.
Two of Long's supervisors, Clarence Price and Butch Porter, testified that Long performed all of his job duties satisfactorily, and did not complain of pain, grimace, limp, or favor his left foot after he returned to work in September 1986. Both testified that Long did not miss work since September 1986 except when he had surgery for the neuromas in June 1989. Long said he has taken time off from work to see Dr. Nawas but has claimed it as sick leave or vacation time so he would not lose any pay.
According to Price, some overtime work at the mill is mandatory and some is voluntary. Price said that Long volunteered for overtime work after September 1986, but did not recall when or how often. Long said he did this so he would not lose any pay when he missed work to see Dr. Nawas. *858 Long testified that he saw Dr. Nawas more than five times between September 1986 and June 1989. Dr. Nawas noted only five visits.
The trial court found that Long
is not entitled to penalties and attorney's fees ... [or] ... to supplemental earnings benefits.
The working in pain doctrine is no longer viable except ... to the extent that it may be applied to find plaintiff entitled to temporary total disability.
Plaintiff and his doctor referred to his pain as "slight to moderate." There is no evidence from plaintiff's co-workers of his having complained of hurting while performing his work. He has performed his work the same as other employees in a like job. It is the Court's opinion that plaintiff has not proved his case by a preponderance of the evidence.

TEMPORARY TOTAL DISABILITY
The working in pain doctrine was applicable to temporary total disability claims at the time of Long's injury but has since been legislatively abrogated in temporary total cases. Long, 554 So.2d at p. 183. We apply the law in effect at the time of Long's injury.
A claimant who works in pain may be deemed disabled if he proves by a preponderance of the evidence that his pain is substantial, but is not deemed disabled if he merely suffers some residual pain or discomfort while working. Reynolds v. Wal Mart Stores, Inc., 445 So.2d 490 (La. App.2d Cir.1984).
Whether pain is substantial enough to be disabling is a factual issue to be resolved by the trial court based on both lay and medical evidence. Lucas v. Ins. Co. of North America, 342 So.2d 591 (La. 1977); Baggett v. Bagwell Coating, Inc., 477 So.2d 1303 (La.App. 3d Cir.1985). When the trial court believes one of two permissible views of the evidence in making a factual finding, that finding cannot be found to be clearly wrong on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Long said he has had "constant" pain since he returned to work in September 1986, but did not describe the degree of his pain. Dr. Nawas knew that Long still had "slight to moderate pain" that would increase with certain activities. He knew the type of work that Long was doing when he released Long to return to work in September 1986 without physical restrictions.
Dr. Nawas did not thereafter place restrictions on Long's activities when Long complained of pain or swelling in his foot on his infrequent visits to Dr. Nawas before he began having pain from the Morton's neuromas in May 1989. Long's supervisors testified that Long, after 1986, did not miss any work except for the neuroma surgery, did not complain about his duties or perform them unsatisfactorily, and did not complain of pain or appear to be in substantial pain while working. Long took little or no pain medication from September 1986-June 1989. Dr. Nawas did not expect or note Long to have any recurring pain or residual impairment from the neuromas that were removed in June 1989.
The lay and medical evidence in this record amply supports the trial court's finding that Long's pain after he returned to work in September 1986 was not substantial or disabling. Compare factually Dauzat v. Gregory & Cook, Inc., 454 So.2d 807 (La.1984) and Sykes v. Crown Zellerbach, 521 So.2d 621 (La.App. 1st Cir.1988).
Long alternatively contends that he should receive temporary total disability benefits under either or both the "odd lot" and the "sheltered employment" doctrines. He argues he is a 39-year-old "odd lot" employee with a high school education who has worked as a manual laborer for Manville for 17 years. These facts do not, of themselves, show that there is no reasonably available job market in which Long can compete. See and compare Patton v. Mini-Togs, Inc., 575 So.2d 864 (La.App.2d Cir.1991), writ denied, and Sykes v. Crown Zellerbach, supra.
Long contends that the work he did for Manville after his injury was "sheltered employment" because his immediate supervisor, *859 Price, gave him lighter shop duties than other employees.
Price testified to the contrary. He said that Long "does a good bit of cleanup work in the shop," but explained that other employees also do cleanup work and that he tries not to favor Long over the other 13 employees in making job assignments. Both Price and Porter, the maintenance superintendent, testified that they had seen Long change rolls, move equipment, build scaffolds and lift heavy objects since he returned to work in September 1986. About a week before trial Porter saw Long and two others work for several hours, squatting and lifting while changing a pump.
The record simply does not factually support Long's "sheltered employment" argument.

SUPPLEMENTAL EARNINGS BENEFITS
In Long, we said that "no supplemental earnings benefits are awardable" because Manville's affidavit in support of its motion for summary judgment showed that Long was earning more than 90 percent of his wages at the time of the injury. 554 So.2d at p. 183. Long concedes that he is not entitled to SEB for any past period, but contends he should be awarded SEB "for each week when he is unable to earn 90 percent of his pre-injury wages," apparently referring to future time periods, because Dr. Nawas said he "might consider modifying [Long's] job ... in the future ... in order not to allow him to stand and walk excessively." Dr. Nawas's deposition was not in the record of the 1989 appeal of the summary judgment.
Because Long's claim for future SEB was obviously not made or addressed when the motion for summary judgment was decided and appealed, we address the claim in this appeal and do not apply the "law of the case" doctrine to bar the claim. See and compare Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973).
An award of SEB is founded on proof of an injured worker's diminished earning capacity, not merely on the fact that he is partially disabled. LRS 23:1221(3); Johnson v. Aetna Cas. & Sur. Co., 422 So.2d 1187 (La.App. 1st Cir.1982), writ denied; Reynolds v. Wal Mart Stores, Inc., supra. Even if we assume that Long's work activities may be restricted in the future, as Dr. Nawas speculated, we obviously cannot deduce what effect this will have on Long's earning capacity. See and compare Ben v. Alberto Culver/Sally Beauty Co., 544 So.2d 1291 (La.App. 4th Cir.1989).
In Ben, supra, the claimant was paid weekly benefits for about six months, including one or more months when she worked part-time, after which she resumed full-time work and earned 90 percent or more of her pre-injury wages. The trial court denied Ben's demand for an award of SEB for the statutory maximum of 520 weeks, but reserved her right to seek SEB in the future. The appellate court amended the judgment to omit the reservation of Ben's right to future SEB because she had returned to full-time work and was earning at least 90 percent of her pre-injury wages.
Ben should be compared with Smith v. Georgia Cas. & Sur. Co., 503 So.2d 720 (La.App. 3d Cir.1987). Smith was injured in February 1984 and was awarded SEB "for each week from September 19, 1984 through September 27, 1985," when he began earning more than his pre-injury wages. Smith was also awarded SEB "for each month [he] does not earn wages equal to 90% or more of the wages he was earning at the time of his injury for a period of 520 weeks." 503 So.2d at 721-722. On appeal, the employer argued that no SEB award should have been made for the period after Smith began earning more than his pre-injury wages. The court of appeal disagreed and affirmed the judgment, noting that it limited the award of future SEB to those months in which Smith does not earn at least 90 percent of his pre-injury wages.
Here, the trial court did not award Long SEB for future or past periods. Long admits *860 he has thus far earned more than his pre-injury wages since returning to work in September 1986. We express no opinion whether Long may reopen or seek modification of the judgment denying his SEB claim if his circumstances change. See and compare LRS 23:1310.8, former § 1331, Schultz v. Katz and Besthoff, Inc., 499 So.2d 1243 (La.App. 4th Cir.1986), writ denied, and Disotell v. Wadsworth Golf Const. Co., 500 So.2d 371 (La.1987).
On this record, an award of SEB for future months in which Long may earn less than 90 percent of his pre-injury wages because of a disability resulting from his 1985 work injury would be purely speculative and premature. We shall not make such an award. Ben v. Alberto Culver/Sally Beauty Co., supra.

REHABILITATION SERVICES
Long contends that because he is working in pain, he is entitled to rehabilitation services under LRS 23:1226 "in order that he might learn a skill which will enable him to obtain less physically demanding employment at his pre-injury wage." The trial court did not separately address this claim in its reasons for judgment.
An injured employee is entitled to rehabilitation services only when his injury "precludes [him] from earning wages equal to wages earned prior to the injury." § 1226 A. Having earned more than his pre-injury wages since he returned to work in September 1986, Long is not entitled to rehabilitation services. Ben v. Alberto Culver/Sally Beauty Co., supra.

DECREE
At Long's cost, the judgment is AFFIRMED.