475 So.2d 122 (1985)
Bobby Joe LOUD, Plaintiff-Appellant,
v.
DIXIE METAL COMPANY, INC., and XYZ Insurance Company, Defendant-Appellee.
No. 17159-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*123 Campbell, Campbell & Johnson by John C. Campbell, Minden, for plaintiff-appellant.
Mayer, Smith & Roberts by Kim Purdy, Shreveport, for defendant-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a workers compensation suit. The plaintiff, Bobby Joe Loud, suffered a back injury on the job on February 18, 1982. He filed suit for compensation on August 19, 1983. The defendant, Dixie Metal Co. Inc., filed an exception of one-year prescription under LSA-R.S. 23:1209. The trial court sustained the exception and dismissed plaintiff's suit. The plaintiff now appeals and, for the reasons expressed, we reverse and remand.
Loud was using a front-end loader to remove lead from slag on his employer's premises when he accidentally struck a protruding metal pipe, causing the loader to stop suddenly. Loud received a jolt and was fortunately strapped to the seat or else he would have been thrown off. He experienced back pain that was sudden and so great that he needed fifteen minutes to climb down from the machine before reporting the accident to his employer. Despite its initial acuteness, the pain apparently subsided to the extent that Loud was able to return to work.
The following day, Loud saw Dr. Hudson, the company doctor. According to Loud, Dr. Hudson ran an X-ray that showed "something," prescribed some pain medicine and instructed Loud to come back if the pain persisted. The pain medicine did some good and Loud never missed a day of work at Dixie Metal. He was nevertheless still bothered by nagging pain in his lower back, radiating pain in his leg, and numbness in his foot. Long periods of sitting or standing would aggravate the pain, as would bending the waist. Because the pain would not go away, Loud went to see Dr. Brian, an orthopedist, on March 29, 1982. Dr. Brian performed a physical exam that essentially confirmed Loud's complaints. He suggested a hospital trip for neurological examination but Loud preferred conservative, at-home care. Dr. Brian approved, fitted him with a corset, prescribed some additional medicine, and recommended bed rest. He lacked objective proof to make a positive diagnosis, but felt the symptoms were consistent with a condition known as nerve root irritation.
Loud returned to Dr. Brian several times. On April 5, he reported a slight improvement but still complained of back pain. On May 17, he was still suffering so Dr. Brian recommended a second opinion from Dr. Smith. Dr. Smith ran an EMG that was normal and found "no gross neurological defects." Loud returned to Dr. Brian in November, still complaining of pain. Dr. Brian noted tenderness in the L5-S1 area. He continued a prescription of muscle relaxants and anti-inflammatory agents.
By December 13, the pain had worsened and Dr. Brian requested a new EMG. He received the results on January 31, 1983, amid Loud's continued complaints of pain. This EMG showed "highly probable" nerve root irritation in the first sacral joint. Loud's most recent visit to Dr. Brian was on May 14, when he complained that the pain had grown still worse over the intervening months. Loud experienced good days and bad days; on the latter, he could not work. In addition to the medical doctors, Loud has visited a chiropractor who also failed to give him any relief from the pain.
Because Loud never missed any work at Dixie or officially resigned from any job because of disability, the employer never paid weekly benefits, but it did pay medical expenses. The employer eventually stopped paying medicals, although the exact time it did so is not shown in the record. Cf. Loud's Dep., 30-31. Loud filed suit on August 18, 1983, demanding benefits for total and permanent disability, medical expenses, attorney fees and penalties. The trial court took up the exception on the *124 pleadings and the depositions of Loud and Dr. Brian, and rendered the judgment now on appeal.
Ordinarily, a claim for workers compensation must be filed within one year of the accident. LSA-R.S. 23:1209. If, however, "the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops * * *." All actions are nevertheless limited by a two-year period. Loud filed suit after the standard one-year period but within the two-year period. Thus the issue is whether Loud's injury "developed" after the accident, thereby making the suit timely from the date of development.
The issue of when an injury develops was resolved definitively by the supreme court in the seminal case of Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952). In that case an employee was lifting a piece of glass that weighed between ninety and one hundred pounds when he suddenly felt an acute pain in his back. The employee was able to complete his day's work and saw a doctor the following day; the doctor diagnosed neuritis. The employee worked from the day of the accident in January until September, when he requested lighter work because of his back pain. He continued doing light work until the following March, when the pain finally became unendurable. He filed suit for comp in August, almost nineteen months after the accident. The supreme court held that the employee's suit was not barred. The court reasoned that an injury does not "develop" until it prevents the employee from pursuing his employment.
The instant case is almost indistinguishable from Mottet. Immediately after the accident, Loud was able to continue his work as a front-end operator; he later switched jobs and assumed the somewhat lighter duties of a truck driver. However, his work as a truck driver has become increasingly limited by the extreme pain he suffers. By February 14, 1984, he was almost completely unable to work, sometimes putting in one day a week. The change of jobs, the extreme pain, the diagnosis of nerve root irritation and the eventual inability to work preponderate in favor of finding a development of injury.
The continued vitality of the Mottet rule is unquestioned. See Wallace v. Remington Rand Inc., 229 La. 651, 86 So.2d 522 (1956); Brewster v. City of Shreveport, 108 So.2d 801 (La.App. 2d Cir.1959); Harris v. Seaboard Fire & Marine Ins. Co., 337 So.2d 262 (La.App. 2d Cir.1976), writ denied 339 So.2d 853 (La.1976); Huhn v. Kroger Co., 454 So.2d 180 (La.App. 1st Cir.1984); 14 La. Civil Law Treatise (Malone & Johnson, Workers' Compensation) § 384.
The trial court held that because Loud was still doing some work, he could not be considered disabled. We disagree. Just because an employee works sporadically and in great pain does not mean he is not disabled. LeBaron v. La. Pacific Corp., 434 So.2d 496 (La.App. 2d Cir.1983), writ denied 440 So.2d 758 (La.1983).
The employer asserts in brief that since Loud suffered immediate pain, he was aware of his compensation claim sufficiently to commence prescription. The employer cites Guillory v. Maryland Cas. Co., 227 So.2d 620 (La.App. 3d Cir.1969) to support this argument. In Guillory, the employee sustained an injury on August 7, 1967, quit his job on September 1, 1967, and sued for comp on October 31, 1968. The trial court found, and the court of appeal affirmed, that the injury developed when the employee quit his job. Thus the suit was indeed filed over one year after the injury developed. Such is not the case here. We admit that Loud's position is somewhat muddled by the fact that the employer, Dixie Metal Co. Inc., closed the plant in March 1982, only a few weeks after Loud's injury. We do not have a complete employment record or a convenient date on which Loud quit trying to work. After Dixie Metal closed, Loud worked one month for a meat processing plant in Kansas and then sporadically for Martin Timber as a truck driver, the job he *125 "held" when he filed this suit. The fact that Loud went to work for different employers is immaterial. Croswell v. Wells, 102 So.2d 794 (La.App. 2d Cir.1958), writ denied. It is clear that Loud's condition took a turn for the worse in December of 1982 or January of 1983, when the irritated nerve root appeared on the second EMG. This is unquestionably when the injury developed. We therefore distinguish the present case from Guillory.
On the contrary, we find that Loud continued to work without full apprehension of the seriousness of his condition. In the first place, he experienced a marked improvement immediately after the accident, and some gradual improvement for a month or so afterwards. Furthermore, the physicians were unable to diagnose any specific organic problem until January 1983. During all these months, it was reasonable for Loud to assume the injury was minor and would eventually go away. In matters of prescription, a layman should not be held to the same standard of vigilance as an attorney. Hebert v. Hartford Acc. & Indem. Co., 331 So.2d 222 (La.App. 3d Cir.1976), writ denied 334 So.2d 229 (La. 1976).
The crucial point is that Loud was substantially unable to perform the duties of his employment by January of 1983, when his injury was diagnosed. Furthermore, our policy in cases of this type is to encourage rather than penalize an employee who seeks to continue working despite what, in legal contemplation, turns out to be disability. Hebert, supra; Beverly v. State through Dept. of Health, 424 So.2d 446 (La.App. 5th Cir.1983). The facts as a whole do not support the trial court's finding that Loud was disabled on the date of the injury.
We therefore reverse the judgment of the trial court which sustained the exception of prescription. We remand the case for determination of the workers compensation benefits to which Loud is entitled, and for determination of the issue of penalties and attorney fees.
REVERSED AND REMANDED.