GUIDRY, Judge.
This suit for worker’s compensation benefits filed by James Olson on February 23, 1984, alleged that he was “presently totally and permanently disabled and/or suffers with a permanent partial impairment” as a result of an accident which took place on March 2, 1982, while he was in the course and scope of his employment with Cardinal Wireline Specialist, a defendant herein.
Defendants, Cardinal and Liberty Mutual Insurance Company (Cardinal’s compensation carrier), admit the accident and a sub *165 sequent temporary and total disability on the part of plaintiff. They paid worker’s compensation benefits through August 25, 1982, shortly after plaintiff was released to return to work by Dr. Ray J. Beurlot. Defendants-appellants argued, and now urge on appeal, that plaintiffs present disability is unrelated to the March 2, 1982 accident; his present disability is not totally disabling; and, plaintiff’s claim for benefits had prescribed under La.R.S. 23:1209 when suit was filed.
The trial court found that plaintiff’s injury of March 2, 1982, did not fully manifest itself until September 1983, and, under the “development of the injury rule”, suit was timely filed. The court also found Olson to be totally and permanently disabled and that his impairment was directly related to the March 2, 1982 accident. The court, however, rejected plaintiff’s claim for penalties and attorney’s fees concluding that defendants had not been arbitrary or capricious in the handling of plaintiff’s claim. Judgment reflecting the trial court’s findings was signed December 5, 1985, and from that judgment, defendants have appealed. We affirm.
Uncontradicted testimony adduced at trial indicated that plaintiff, James Olson, sustained a job-related injury on March 2, 1982, when the company pickup truck in which he was riding was struck from the rear by another vehicle. At the time of the impact, the Cardinal vehicle had stopped upon encountering a multi-car accident in its lane of travel. Prior to the accident, plaintiff had never injured his back or complained of back pain.
Following the collision, Olson was treated by Drs. Kalifey and Beurlot, who both diagnosed plaintiff’s injury as muscle strain. Neither physician believed plaintiff’s injury to be permanently disabling at that time. However, in deposition, both Drs. Kalifey and Beurlot admitted that James’s complaints were consistent with the diagnosis later reached by Dr. Stuart Phillips. In August of 1982, Dr. Beurlot released plaintiff to return to work, at which time plaintiff’s worker’s compensation benefits were terminated. Olson, however, did not return to work because he felt that, due to continuing low back pain, he was then unable to satisfactorily perform his assigned duties.
Plaintiff continued the rest and inactivity which had been prescribed by his physicians and subsequently (sometime after Thanksgiving 1982), his symptoms diminished to a point where appellee believed he could resume working. However, due to economic conditions, he was unable to find employment until September of 1983, at which time he went to work for Rafael Cole building a house.
In his reasons for judgment, the learned trial judge stated:
“... Upon attempting to perform his work with Rafael Cole, plaintiff suffered severe pain and was unable to perform the assigned duties. Therefore, plaintiff terminated his employment with Cole. It was then that plaintiff realized that he was suffering from a serious impairment which had belately [sic] manifested itself
[[Image here]]
Clearly plaintiff did not realize that he had suffered a serious disabling condition as a result of the March 2, 1982 accident until he attempted to return to work in September of 1983 ... Plaintiff’s suit for workmen’s compensation benefits was filed in February of 1984 within one year of the development and manifestation of the injury.
The evidence establishes that plaintiff’s present impairment is related to his on the job accident of March 2, 1982. There was no evidence of any intervening accident which may have caused the herniation of plaintiff’s L4-5 disc. The medical testimony demonstrated that is [sic] is not inconsistent for the symptoms and impairment of a herniated disc to ... become manifest or fully developed until months or even years after an accident. In this case, proceedings were instituted February 22, 1984 within six months of September 1983, the date his disabling condition became manifest to plaintiff. Therefore, plaintiff, James Olson, timely
*166 filed this suit for workmen’s compensation benefits and thus his claim for total disability has not prescribed.
As plaintiff was not working at the time the compensation benefits were paid to him, his compensation rate would have been the same whether paid for total disability or partial disability; also, plaintiff had not agreed as to whether the compensation benefits were being paid for total or partial disability. Therefore, also under the dictum found in Miller v. Belden Corp., 3rd Cir.1980, 386 So.2d 974, plaintiffs claim had not prescribed.
Because of financial necessity, plaintiff did sign up for and collect some thirty weeks of unemployment benefits [during 1983] ...; he did sign the application for benefits indicating that he was able to work and available for employment. This action seeking unemployment benefits by plaintiff has no bearing on the merits of his workmen’s compensation claim.”
Although suit was filed in February of 1984, it was not until plaintiff saw Dr. Stuart Phillips in October, 1984 that the condition causing his disability was pinpointed. Dr. Phillips, after examination of plaintiff, suspected an injury to a lower lumbar disc with nerve root involvement and related this condition back to the March, 1982 accident. In December, 1984, a CAT scan and thermogram performed on the patient confirmed Dr. Phillips’ diagnosis: a herniated nucleus pulposis (disc). Olson was admitted to the hospital the following spring where Dr. Phillips performed a laminectomy and excision of the disc on April 24, 1985. At the time of the trial, September 3, 1985, Dr. Phillips was of the opinion that plaintiff was still totally disabled. However, Dr. Phillips felt that his condition would improve with the passage of time.
Basically, the development of the injury rule relied upon by the trial court dates back to Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956). In Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419 (La.1978), the Louisiana Supreme Court explained the rule thus-iy:
“The underlying rationale of the Wallace rule is that an employee who becomes disabled after the prescriptive year (but within two years after the accident) will not be penalized by the loss of his compensation rights, unless he fails to bring suit to enforce them within one year after it is manifest, rather than conjectural, that he has a compen-sable claim. See also: Bigham v. Swift & Company, 229 La. 341, 86 So.2d 59 (1956); Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2 (1955); Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952).” (Emphasis ours).
More recently, in Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122 (La.1986), the court stated:
“... La.R.S. 23:1209 provides, in pertinent part:
Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
The interpretations of this provision stand for the general proposition that development of the injury actually means development of disability, and disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner. ... Although that point in time will often coincide with the date on which he ceases employment with the employer, in some cases it may not occur until later. ...
For example, if an employee returns to work for his employer, or even a different employer, after an injury and a brief recuperation, only to find at a later date that his injury was finally disabling, his injury would not have “developed” until *167 it was clear that he was disabled from performing the tasks alloted to him.” (Emphasis ours — citations omitted).
We find no clear error in the trial judge’s determination that Olson’s back injury had not fully developed or become disabling until September, 1983 when he attempted to return to work but, due to the injury, was unable to perform the tasks allotted to him.
Further, we find that the medical and lay evidence taken as a whole fully supports the findings that the plaintiff’s disability related back to the accident of March 2, 1982, and that, at the time of the trial, he remained totally disabled.
Accordingly, for the reasons stated, the judgment appealed from is affirmed. Appellants are to bear all costs of this appeal.
AFFIRMED.