526 So.2d 1248 (1988)
Joseph R. BERNARD, Plaintiff-Appellant,
v.
WOODROW WILSON CONSTRUCTION CO., INC., et al., Defendants-Appellees.
No. 87-159.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Writ Denied May 20, 1988.
*1249 Juneau, Hill, Judice, Hill & Adley, P.L.C., Edward J. Marquet, Lafayette, for plaintiff-appellant.
Mouton & Roy, John A. Bivins, Lafayette, for defendants-appellees.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff, Joseph R. Bernard, sought worker's compensation benefits for total permanent disability, statutory penalties and attorney's fees, for a work-injury on December 1, 1982. Suit was filed on April 23, 1984. The case was tried before a magistrate by joint stipulation. At the conclusion of the trial the magistrate maintained a plea of one year prescription, which had been referred to the merits, and dismissed the suit. Bernard appealed. We reverse and overrule the plea of prescription, and render judgment in plaintiff's favor for partial disability benefits, denying the claim for penalties and attorney's fees.
Bernard was employed as a carpenter by Woodrow Wilson Construction Company, Inc., in Lafayette, Louisiana. He was injured when he was struck between the shoulder blades across his back by a large swinging elevator shaft form.
Following the accident on December 1, 1982, he was seen by the company physician, Dr. J.J. Fournet, who diagnosed a neck muscle strain and expected it to soon resolve. He treated plaintiff for about two weeks then released him for work. Bernard returned to duty without any problems, but two weeks after he returned to work, in late December 1982, he was laid off by Woodrow Wilson because of a shortage of work in the area. Bernard has not worked for Woodrow Wilson since.
Claimant did not go see another doctor until he saw Dr. Robert Kapsinow on February 21, 1984. He testified he went to see this doctor because his neck was getting worse. Dr. Kapsinow died prior to trial and did not testify. The doctor's bill for services was introduced into evidence and it showed that the first visit was February 21, 1984, corresponding to Bernard's testimony that that was the first time he saw this doctor. According to Bernard's testimony, Dr. Kapsinow diagnosed a serious neck injury and told plaintiff he should not work.
At Dr. Kapsinow's recommendation, Bernard sought treatment from a neurosurgeon, Dr. Ricardo Leoni on March 22, 1984.
*1250 This referral and the date was confirmed by Dr. Leoni's testimony by deposition. After several months of treatment, Dr. Leoni eventually performed cervical laminectomies at C 4-5 and C 5-6 on September 22, 1984. Dr. Leoni testified that the neck problem which required the surgery resulted from the accident on December 1, 1982.
A number of medical depositions make it clear that the neck problem that developed during the months after Bernard was laid off was related to the December 1, 1982, accident.
We will first explain why we are reversing the ruling as to prescription, and then, because the record is before us, we will decide the case on the merits.
PRESCRIPTION
The issue of prescription is controlled by the "development of injury" rule as specified in R.S. 23:1209. This statute provides, in pertinent part: "[w]here the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
This question of fact must be determined from the testimony and other evidence in the record before us. If the injury developed after April 23, 1983, then Bernard's suit, which was filed April 23, 1984, was timely, because suit was filed within the two year prescription period. Conversely, if the facts reveal that the injury developed prior to April 23, 1983, then the action is barred by prescription.
The courts of this state, beginning with Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952), have given this provision a liberal construction. The interpretations of this provision stand for the general proposition that development of the injury actually means development of disability, and disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner. Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122 (La.1986).
Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer. Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522 (1956).
In Bolden v. Georgia Casualty and Surety Company, 363 So.2d 419, 422 (La. 1978), the Louisiana Supreme Court explained the rule as follows:
"The underlying rationale of the Wallace rule is that an employee who becomes disabled after the prescriptive year (but within two years after the accident) will not be penalized by the loss of his compensation rights, unless he fails to bring suit to enforce them within one year after it is manifest, rather than conjectural, that he has a compensable claim. See also: Bigham v. Swift & Company, 229 La. 341, 86 So.2d 59 (1956); Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2 (1955); Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952)."
Recent decisions applying the rule include Olson v. Cardinal Wireline, 502 So. 2d 164 (La.App. 3rd Cir.1987). There, a claimant, after a period of disability following an accident, improved to a point where he could work, but he could not find a job due to economic conditions; later when work became available he discovered that he was unable to work because of a herniated disc. The discovery that he was unable to work was marked as the time when the injury developed.
The case of Loud v. Dixie Metal Company, Inc., 475 So.2d 122 (La.App. 2nd Cir. 1985) is similar to the facts in the present case. Loud had an accident, but he was able to go on working. His employer closed the plant only a few weeks after the injury. The court recognized that the employment record was "somewhat muddled" after that time, but was satisfied that the evidence disclosed that Loud's condition took a turn for the worse many months *1251 later, at which time it could be determined that the injury had developed.
Applying the above cited principles, Bernard's disability did not develop until February 21, 1984. That is when he was informed by Dr. Kapsinow that he had a serious injury. Prior to this time, it was not clear to plaintiff that he could not perform his duties as a carpenter. The undisputed facts are that, after his injury, he returned to work without any apparent disability, and was then laid off. He tried to get a job and reported regularly to the union hall trying to get work throughout 1983 and during early 1984. Throughout the same time period he performed chores around his home. In 1983 he did some sheetrock work. He had some problems with his neck which would "come and go" but he thought he could work. He testified that in early 1984 the neck got worse and that is when he went to see Kapsinow. Bernard testified as follows:
"Q. Now, during this period of time when you were laid off, and you tried to get employment and weren't able to find any work, what sort of physical problems were you having, if any?
"A. Just a burning of the shoulder blades, between my shoulder blades burning me. You know, an off and on thing, you know. That was it.
"Q. And what was your expectation, as to what was wrong with you? What did you think was wrong with you, if anything?
"A. I thought it was just my muscles was causing me problems, you know.
"Q. Based upon Dr. Fournet's treatment, you expected that you'd get better?
"A. Yes, I did.
"Q. And during that period of time, that year or so period of time, did you feel like you were able to work?
"A. Yes.
"Q. What sort of things did you do around the house, during that period of time?
"A. The usual. I would cut my grass and do the things thatyou know, take care of my chores around the house, really.
". . .
"Q. Now, after you saw Dr. Kapsinow, did you continue to draw unemployment?
"A. No.
"Q. Why is that?
"A. They stopped my claim, because if you're not able to work you can't draw unemployment.
"Q. And who advised you you were unable to work?
"A. Dr. Kapsinow did.
"Q. Did he explain to you why he thought you were unable to work?
"A. He told me I was having a seri I had a serious problem, that I needed to get it taken care of."
We believe that the trial court erred in placing the burden of proof as to prescription on the plaintiff. We have been unable to find a case squarely holding what party has the burden of proof when prescription is raised in a case where plaintiff pleads the development of the injury rule. We note in the present case that the petitioner specifically pleaded the development of his injury into an eventual disability, and the proper prescription period, under those pleadings, is two years. Thus, the petition on its face does not show that the claim is prescribed, and the usual rule in such a case is that the party pleading prescription has the burden of proving the facts supporting the plea. Randol v. Lawrence, 205 So.2d 113 (La.App. 2nd Cir.1967); Langlinais v. Guillotte, 407 So.2d 1215 (La.1981). The trial judge in the instant case applied the opposite rule and held that Bernard had the burden of proof. In Williams v. International Lubricant Corporation, 341 So. 2d 17, 20 (La.App. 4th Cir.1976), writ denied 342 So.2d 872 (La.1977), the court said:
"We view the resolution of this issue as one of law, essentially involving the burden of proof. The defendant who pleads prescription in a compensation case has the ultimate burden of proof. Although plaintiff's claim under the allegations of the original petition was prescribed on the face of the pleading, the *1252 amended petition alleged payment of compensation benefits from June through October. Under the allegations of this amendment ... the claim was not prescribed, and the burden of proving prescription was on defendant."
We agree with this rationale, and it is our opinion that the trial court erred as a matter of law in holding the plaintiff to the burden of proof as to this issue.
The trial court found that the plaintiff had not carried his burden of proof by showing when he saw Dr. Kapsinow for the first time in February 1984. Even if plaintiff had the burden of proof, this finding of fact was clearly wrong. Admittedly, Bernard's wife confused this issue in her testimony, by one time saying it was two months after the accident and on another occasion saying it was a year after the accident when he first saw Dr. Kapsinow. However, the remaining evidence clarified this question. Bernard put in evidence a bill from Dr. Kapsinow showing the first visit on February 21, 1984. He testified that was when Dr. Kapsinow told him he had a neck problem that he needed to see about. Dr. Leoni's deposition corroborates this. Dr. Leoni testified that he saw Bernard in February 1984 on a referral from Dr. Kapsinow having to do with the discovery of a serious neck problem.
Plaintiff became aware in February of 1984 that his injury was of such a nature that he could no longer perform the duties of his employment. Before February 21, 1984, neither the claimant nor the original physician, Dr. Fournet, were cognizant of the severity of the injury. To conclude that the injury developed at any time prior to February 1984 is dealing in conjecture and the commencement of prescription cannot be decided on that basis. Wallace, supra, 86 So.2d at 525. Since the suit was filed within a year of the development of the injury, Bernard's claim had not prescribed.
Because the case was decided on prescription, the trial court did not reach the merits. The record is complete and before us, and we now decide it on the merits. Plaintiff urges us to make an award based on total permanent disability, or at least partial disability, and in any event to also award penalties and attorney's fees. We will consider each claim.
TOTAL DISABILITY
This injury happened before the effective date of the 1983 amendments to the Worker's Compensation Act. The case is accordingly governed by the "old" law. Prior to the 1983 amendment, La.R.S. 23:1221(2) defined total permanent disability as inability "to engage in any gainful occupation for wages." Plaintiff asserts that he is totally disabled pursuant to the odd-lot doctrine.
The odd-lot doctrine entitles an employee to compensation for total disability when, as a result of a compensable injury, he is rendered unable to perform any services for which a reasonably dependable market exists. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). Applying the odd-lot analysis as explained in Woodard v. Gregory and Cook, Inc., 442 So.2d 912 (La.App. 3rd Cir.1983), to the facts of the instant case, we conclude that Bernard is not totally and permanently disabled. Plaintiff was 36 years old at the time of the accident and was in excellent health. He has an eighth grade education and all his previous employment has been limited to manual labor. Bernard had an excellent work history prior to the accident. However, he has basically not been employed since the accident. His treating physicians testified via deposition. Dr. Leoni stated that, due to the neck injury and subsequent operation, plaintiff could not return to performing heavy labor. Bernard thus made out a prima facie case that he is an odd-lot employee.
However, Woodrow Wilson met its burden of proof by showing that suitable work is regularly available to Bernard. At trial, the defense presented Leonard Francois, who was qualified as an expert in vocational rehabilitation. Francois expressly stated that work was regularly available to the claimant in the Lafayette area, despite Bernard's limitation to light duty. Francois testified:

*1253 "Q. What is your opinion about your ability to get Mr. Bernard gainful employment in the immediate future? If you or a person, similarly situated to you, were requested to do so?
"A. I have no doubt that I could place him in a job."
Additionally, plaintiff admitted that he could do light duty work. Dr. Leoni testified that Bernard could do most things and "a million jobs". Under the facts of this case, we find Bernard does not fit within the category of odd-lot workers and is not entitled to total disability benefits.
PARTIAL DISABILITY
However, we do find that Bernard is permanently and partially disabled. Under the provision of former La.R.S. 1221(3), if an employee is unable to perform the duties in which he was customarily engaged when injured, he is entitled to partial disability benefits. Each treating physician concluded that Bernard was not able to return to his previous employment or similar type employment. He simply is unable to perform the same duties in which he was customarily engaged when injured or duties of the same or similar character for which he was fitted by education, training or experience. See Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982).
PENALTIES AND ATTORNEY'S FEES
Plaintiff's claim for statutory penalties and attorney's fees is denied. An employee is only entitled to penalties and attorney's fees if the employer's conduct is arbitrary, capricious or without probable cause. Bernard asserts that Woodrow Wilson was arbitrary and capricious in their refusal to pay for the medical services of Dr. Robert Morrow to whom Bernard was referred by Dr. Leoni. However, this assertion is not supported by the record.
The claimant was referred to Dr. Morrow because he complained of hand pain. Dr. Leoni only testified that it was possible that the employment injury caused the alleged hand pain. Dr. Snatic, another neurosurgeon, testified that the complaints of hand pain were not related to the accident. Accordingly, defendant relied on competent medical evidence in making its decision not to guarantee the payment of Dr. Morrow's bill. This reliance was reasonable and defendant's refusal to pay the bill was not arbitrary nor capricious.
Therefore, for the reasons assigned, the judgment of the trial court maintaining the plea of prescription is reversed. The plea of prescription is overruled. On the merits, plaintiff is entitled to partial permanent disability benefits pursuant to the provisions of LSA-R.S. 23:1221(3), in effect December 1, 1982, dating from February 21, 1984, not to exceed 450 weeks, subject to a credit for prior benefits paid and actual wages earned. Legal interest shall accrue on all past due payments from date due until paid. The plaintiff is also entitled to all medically-related expenses actually incurred and necessary for the correction and treatment of his injury as set out in LSA-R.S. 23:1203. The plaintiff is not entitled to penalties or attorney's fees, but the costs of these proceedings are taxed to the defendants.
REVERSED AND RENDERED.