631 So.2d 572 (1994)
Thomas E. DAVIS, Plaintiff-Appellee,
v.
UNITED GENERAL INSURANCE CO., et al., Defendants-Appellants.
No. 93-738.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
Rehearing Denied March 11, 1994.
*574 James Ray Morris, Lake Charles, for Thomas E. Davis.
Mesonie Terrence Halley Jr., Lake Charles, for LIGA.
Before GUIDRY and YELVERTON, JJ., and BERTRAND, J. Pro Tem.
GUIDRY, Judge.
This is a worker's compensation case. Defendant, the Louisiana Insurance Guaranty Association (LIGA), appeals the trial court's judgment rendered in favor of plaintiff, Thomas Davis, finding Davis to be temporarily and totally disabled and entitled to benefits therefor from November 8, 1984. LIGA asserts that the trial court erred in denying its peremptory exception of prescription and finding that Davis proved his temporary total disability status. For the following reasons, we affirm the denial of the prescriptive plea and amend the disability finding.

FACTS
Davis was involved in a work-related accident on April 5, 1982 while employed as an operator foreman for Serv-Tech Specialists, Inc., an industrial service company specializing in hydroblasting and cleaning of chemical plants and oil refineries. On the day in question, Davis and his work crew were cleaning equipment at the Cities Services oil refinery in Lake Charles. As Davis was pouring an aqua ammonia solution into a tank positioned on a trailer, he was overcome by ammonia fumes, lost his balance and fell to the ground. He landed on the right side of his body and felt pain mainly in his knee and wrist. His supervisor, Garrett Monk, witnessed the fall. The incident was reported to his employer at its Lake Charles office, but Davis did not miss any work immediately thereafter.
A few days later, Davis experienced increased pain and swelling in his right knee. Valerie Balzoni, Serv-Tech's office manager, referred him to the Grimball and Richert Clinic, which had been retained by Serv-Tech to provide medical services to its employees. Serv-Tech represented to Dr. Allen *575 Richert, Sr. that Davis was a worker's compensation patient. On June 21, 1982, he was examined by Dr. Richert, who diagnosed effusion, a collection of fluid secondary to an injury, and bursitis. Richert aspirated Davis' knee and prescribed an anti-inflammatory drug. Either Richert or Grimball saw Davis on four more occasions until they released him on July 24, 1982. With the exception of the days of work missed to see the doctors, Davis continued to perform his work duties and was paid therefor despite the continued pain and swelling. Davis' job, in part, entails lifting of high pressure water hoses which weigh between 50 and 75 pounds and climbing ladders attached to plant towers in order to reach the higher areas for cleaning purposes. These two activities, lifting and climbing, tended to exacerbate the pain and swelling in his knee.
In July, 1982, Serv-Tech laid Davis off. He moved to his home state of Tennessee and, while there, his family doctor aspirated his knee once. In April, 1983, Davis moved back to Lake Charles and began working for Serv-Tech again. His knee problems were not resolved, and he saw Dr. Richert three times between December 30, 1983 and August, 1984. Davis missed over a week of work on the advice of Dr. Richert following the December 30, 1983 visit. He was not paid wages or compensation benefits. Balzoni informed both United General Insurance Company, Serv-Tech's worker's compensation carrier, and American International Adjustment Company, the claims adjuster, of Davis' entitlement to compensation by letters dated January 12, 1984 and February 3, 1984, respectively. United General responded with a request for a medical records authorization from Davis. No further correspondence was received by Serv-Tech from United General.
Dr. Richert referred Davis to Dr. David Drez, an orthopedic surgeon. Upon receiving the referral, Dr. Drez's office contacted Serv-Tech to obtain Davis' worker's compensation claim number. Wayne Lebert, Serv-Tech's Lake Charles district manager, was surprised to discover that Davis had not been assigned a claim number. With a call to the Grimball and Richert Clinic, Lebert discovered that Davis had no claim number on file there and that his medical expenses had been paid by Serv-Tech company checks. Dr. Drez refused to treat Davis without the issuance of a worker's compensation claim number or some other guarantee of payment.
Lebert next contacted Martha Calvin in Serv-Tech's Houston corporate office. She informed him that the injury would not be covered as a worker's compensation claim because, in her view, it had not been timely reported to either the corporate office or United General.
Lebert next spoke with Buster Austin, Serv-Tech's vice-president, who agreed that Davis' worker's compensation coverage problem was the result of a "paperwork malfunction". He agreed verbally that, if Davis were to seek coverage for further treatment under the company's group health insurance, Serv-Tech would pay his deductible and 20% copayment. In the meantime, Austin promised to clear up the "paperwork malfunction" and assured Lebert that Davis would be covered under the worker's compensation policy.
Apparently, this resolution satisfied both Davis and Dr. Drez, who first examined Davis' knee on November 5, 1984 and performed arthroscopic surgery on the knee three days later. The surgery revealed a condition known as pigmented villondular synovitis, an abnormal growth of knee joint tissue. Davis saw Dr. Drez again on November 28, 1984 and December 26, 1984, at which time minimal swelling and overall improvement were noted. Due to the surgery, Davis was not working but was paid his regular wages based on a 40 hour work week until his return on December 6, 1984.
In December, 1984, Lebert discovered that Davis was not enrolled in Serv-Tech's group health insurance plan and could not seek coverage thereunder for his medical expenses. Despite his personal impression that Serv-Tech was responsible for Davis' injury, Lebert informed Davis that Serv-Tech's corporate office stood firm in its position that his medical expenses were not covered by either health insurance or worker's compensation.
*576 In early 1985, Davis consulted an attorney, who made demand upon Serv-Tech and United General. When this effort failed, Davis filed suit against United General on September 11, 1985 seeking payment of weekly compensation benefits, medical expenses, penalties and attorney's fees. United General answered the suit and filed an exception of prescription. Davis continued to work for Serv-Tech until he was once again laid off on February 10, 1986. He moved back to Tennessee and began working as a truck driver for VAMAC, a freight hauling company.
On November 12, 1986, Davis added Serv-Tech as a party defendant. In 1987, the Louisiana Insurance Commissioner placed United General into liquidation. Davis then added LIGA as a party defendant on November 17, 1987.
After lengthy discovery, trial of this matter was held on September 11, 1992. At the commencement of the proceedings, the parties stipulated that Davis was involved in a work-related accident on April 5, 1982 and that his compensation rate would be $183.00 weekly. At the time of trial, he was still employed by VAMAC as a truck driver. After trial, the court took the case under advisement.
On January 4, 1993, the trial judge rendered written reasons for judgment wherein he concluded that the one-year prescriptive period for filing a claim, La.R.S. 23:1209, began to run when Davis' injury developed in December, 1983. The court further determined that Serv-Tech, through the words and actions of its employees, interrupted the prescriptive period at the latest in February, 1984 by representing to Davis that the injury was subject to worker's compensation coverage. Specifically, the trial judge determined that the letter written by Balzoni to United General in February 1984, which admitted plaintiff was entitled to compensation benefits, interrupted prescription. The court found that the claim filed against United General on September 11, 1985 was timely. On the issue of disability, the court concluded that, because Davis had been "working in substantial pain", he was temporarily and totally disabled and entitled to such benefits. The weekly compensation benefits were made subject to an offset for any wages or unemployment compensation benefits received by Davis during his period of disability. The trial court also denied Davis' claim for penalties and attorney's fees.
Judgment in accordance with these reasons was signed on February 2, 1993. LIGA appeals the prescription and disability issues.

PRESCRIPTION
Davis' petition was filed over three and one-half years after the date of his accident, April 5, 1982. LIGA contends that, both on its face and in fact, Davis' claim is barred by prescription.
La.R.S. 23:1209(A) provides, in pertinent part, as follows:
In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and [1] in this Chapter.... Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
The second of the above-quoted sentences is more pertinent to the resolution of the issue before us. Although the statute has been substantively and grammatically amended several times since 1982, the wording and meaning of this sentence has remained unchanged.
The purpose of the two-year prescriptive period is to prevent an employee who suffers an accident with no apparent resulting injury from coming into court over two years later to claim an injury. The legislature has determined that such cases are too suspect to come within the purview of the worker's *577 compensation law. Lester v. Rebel Crane and Service Co., 393 So.2d 674 (La.1981).
Development of injury means development of disability, which marks the time from which the employee is clearly no longer able to perform his duties in a satisfactory manner. Swearingen v. Air Products and Chemical, Inc., 481 So.2d 122 (La.1986). Development signifies something more than occurrence and pain. It equates with the time when disability to perform work becomes manifest either to the injured employee or his employer. Bernard v. Woodrow Wilson Construction Co., Inc., 526 So.2d 1248 (La. App. 3rd Cir.1988), writ denied, 528 So.2d 152 (La.1988). In cases of this nature, the policy is to encourage rather than penalize an employee who continues working despite what, in legal terms, becomes a disability. Collier v. Southern Builders, Inc., 606 So.2d 885 (La.App. 2d Cir.1992).
The two-year provision of R.S. 23:1209 is prescriptive, not peremptive, and, as such, may be interrupted or suspended. La.C.C. arts. 3461, 3462-72; Latino v. Binswanger Glass Co., 532 So.2d 960 (La.App. 5th Cir.1988). Under La.C.C. arts. 3462 and 3464, respectively, prescription is interrupted by the filing of suit or the acknowledgment of the right of the person against whom prescription has commenced. When interruption occurs, the time that has previously run is not counted and prescription commences to run anew from the last day of interruption. La.C.C. art. 3466.
A claimant may prove interruption by acknowledgment by showing his employer lulled him into a false sense of security and thereby induced him to withhold filing suit. Holmes v. Baton Rouge Water Works Co., 558 So.2d 629 (La.App. 1st Cir.1990); Latino, supra, at 962, citing Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972). To prove he was lulled into a false sense of security, a claimant must show that words, actions or inactions on the part of the employer or insurer induced him to withhold suit until his claim prescribed. Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991).
If an injured employee actually earns wages after the accident, they are not considered wages in lieu of compensation and do not interrupt the prescriptive period even if the employee works in pain. Ebbs v. Kelly Services, 520 So.2d 1320 (La.App. 4th Cir. 1988). Conversely, the payment of wages in lieu of compensation will interrupt prescription just as compensation payments would. Lester, supra, at 676.
LIGA contends that the trial court erred in finding that Davis' injury developed in December, 1983. It argues that his injury occurred and the one-year prescriptive period began on the date of the accident, April 5, 1982. Alternatively, LIGA asserts that, even if Davis' injury developed in December, 1983, neither his employer nor its insurer did anything to interrupt the running of prescription between December, 1983 and April 5, 1984, two years from the date of the accident.

DEVELOPMENT OF INJURY
The trial court's conclusion that Davis' injury developed in December, 1983 was apparently based upon Davis' testimony that, during that month, Dr. Richert advised him to "stay off" and "baby" his knee for a couple of weeks. Davis recalled staying off "a week or so" and returning to work around January 7, 1984. Prior to this period, he had missed no work because of his knee except for missing single days for doctor appointments.
The documentary evidence indicates that Dr. Richert saw Davis on December 30, 1983, at which date the knee was aspirated and xrayed. Dr. Richert, in deposition, did not specifically state that, on this visit, he advised Davis to stay off of his knee for a couple of weeks. His deposition was taken over six years after the visit. It is noteworthy that Dr. Richert was not asked whether he advised Davis to take a couple of weeks off. Clearly, Dr. Richert's testimony did not contradict that of Davis. Additionally, the two letters written by Balzoni in early 1984 corroborate Davis' testimony that he had to miss more than a week of work because of his knee for the first time in late 1983 and early 1984.
*578 Factual findings with regard to disability, particularly those involving the weighing of witness credibility, are entitled to great weight and will not be disturbed on appeal absent clear error. Latiolais v. Home Insurance Co., 454 So.2d 902 (La.App. 3rd Cir.1984), writ denied, 460 So.2d 610 (La.1984). In deciding when the injury (disability) developed, the trial judge, citing Holmes, supra, concluded that Davis "was no longer able to perform the duties of his employment in a satisfactory manner in December of 1983". At the time, Davis had not previously missed such an extended period of work because of his knee. Clearly, at this point, the disability to perform work manifested itself to both Davis and his employer, Serv-Tech. In light of the record before us, especially Davis' uncontradicted testimony, the trial court did not clearly err in finding Davis' injury developed in December, 1983. As such, we conclude that the one-year prescriptive period for filing a claim began to run on December 30, 1983.

INTERRUPTION OF PRESCRIPTION
The trial court concluded that the two letters written by Balzoni in Davis' presence to the compensation carrier and adjuster in January and February of 1984 acknowledged his right to claim benefits and, thus, interrupted prescription. The court determined that, at the latest, prescription was interrupted by the February 3, 1984 letter to United General. LIGA questions the correctness of this finding.
Davis testified that he was under the impression at all times following his injury that, because the injury resulted from an on-thejob accident, he would qualify for worker's compensation benefits. Prior to January, 1984, he had never requested benefits because he had not missed over seven work days. According to Davis, Balzoni continually attempted to secure compensation for him. He recalled first being aware that there could be a problem with his compensation coverage status in September, 1984, when Dr. Drez sought a compensation claim number. However, Davis was reassured once again by his supervisor, Lebert, that Serv-Tech would take care of the "paperwork malfunction".
Based on this assurance, he had surgery in November, 1984, and filed for coverage under the group health insurance program under which he was not enrolled. For the month of recuperation after surgery, he was paid regular wages by Serv-Tech. He did not work during this period. According to Davis, he was informed that his medical expenses would definitely not be covered by worker's compensation in February, 1985.
Lebert testified that he was on a leave of absence when Davis' accident occurred. He returned to Serv-Tech in October, 1982, reviewed Davis' file and discovered an accident report therein which had apparently been sent by Balzoni to Serv-Tech's Houston office and its insurer. When informed by Calvin that the injury would not be covered, Lebert consulted Serv-Tech's vice-president, Austin, who agreed to pay for Davis' deductible and co-payment under the group health insurance in connection with knee surgery. Austin also authorized paying Davis regular wages during his recuperation. Lebert emphatically stated that, in his view, Davis' injury was covered under worker's compensation and Serv-Tech was ultimately responsible for medical expenses and compensation benefits. He was unaware of any compensation coverage problems until October, 1984. Lebert felt that, at all times, Davis was trying to cooperate with Serv-Tech and was never hostile toward the company. This is evidenced by the fact that Davis worked for a year following the date on which he discovered that he had no worker's compensation coverage for his medical treatment.
Clearly, the trial court correctly determined that prescription was interrupted on February 5, 1984 when Balzoni wrote the letter to United General in the presence of Davis. This constituted a situation in which, through Serv-Tech's words and actions, Davis was lulled into a false sense of security and thereby induced to withhold suit. He reasonably thought that his injury would be covered under worker's compensation. This interruption did not cease with the September, 1984 discussions between Davis, Lebert, and Austin concerning the source of payment *579 of further medical expenses. Davis was told that Serv-Tech and the group insurer would take care of him in the interim while the worker's compensation "paperwork malfunction" was being cleared up. This was not sufficient to put him on notice that he had no worker's compensation coverage for his injury. If anything, these discussions served to reassure him that he was covered. The interruption continued until, at the earliest, December 8, 1984, when Davis returned to work after recuperating from his surgery and stopped receiving wages in lieu of compensation. Even then, he testified that he was not yet informed of the lack of coverage until February, 1985. Soon thereafter, he consulted an attorney and eventually filed the present claim on September 11, 1985.
When the interruption of prescription ceased, the one-year prescriptive period began to run anew. La.C.C. art. 3466. Whether the interruption ceased in December, 1984 or February, 1985, Davis' suit was timely filed on September 11, 1985, well within one year of either of the above dates. For these reasons, Davis' claim for worker's compensation benefits did not prescribe.

DISABILITY
The trial court concluded that Davis was entitled to temporary total disability benefits because he was "working in substantial pain". LIGA asserts that this conclusion was erroneous. We agree and reverse the temporary total disability award. However, we also conclude that Davis is entitled to supplemental earnings benefits (SEB). We remand for the purpose of fixing the supplemental earnings benefits to which plaintiff is entitled.
Davis' accident occurred in April, 1982 but did not develop until December 30, 1983. The governing law in a worker's compensation action is that which was in effect at the time of the injury. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). In the present factual situation, the "time of injury" equates with the date the injury developed, December 30, 1983. Thus, La.R.S. 23:1221(1), in effect on December 30, 1983, provides the substantive definition of temporary total disability applicable to this case. The statute provided:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
Despite dramatic changes in the worker's compensation law effectuated by 1983 legislation, the working in substantial pain doctrine remained applicable to temporary total disability cases. Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1st Cir.1988), writ denied, 530 So.2d 88 (La. 1988); Thomas v. Elder Pallet and Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3rd Cir. 1986), writ denied, 497 So.2d 312 (La.1986). Under this doctrine, if the claimant's injuries are such that the performance of important functions of his old trade involve substantial pain and suffering, he is deemed disabled. Charles v. Aetna Casualty and Surety Co., 525 So.2d 1272 (La.App. 3rd Cir.1988), writ denied, 531 So.2d 480 (La.1988). A claimant is not disabled if he merely experiences some residual pain and discomfort while working. Long v. Manville Forest Products Corporation, 593 So.2d 854 (La.App. 2d Cir.1992), writ not considered, 595 So.2d 649 (La.1992). The question of whether pain is substantial enough to be disabling is ordinarily not a purely medical question. It is a factual issue to be determined by the trier of fact on the totality of the evidence, both lay and medical. As such, the trier of fact's determination should not be disturbed on appeal unless such finding is clearly wrong. Willie v. Balehi Marine, Inc., 525 So.2d 231 (La.App. 1st Cir.1988).
Davis testified twice by deposition and once at trial. In his first deposition taken October 24, 1985 while he was still employed *580 by Serv-Tech, he stated that his job entailed carrying heavy hoses both on ground and up ladders and holding on to a hose while very high pressure water flowed out. Davis explained that his knee began to swell a few days after the fall, but he continued to work despite the swelling and accompanying pain. The pain became most intense when putting a substantial amount of weight on his knee or when he carried heavy objects. The pain precluded him from driving the bigger trucks and climbing ladders, and was particularly difficult in winter when his knee stiffened more often.
Davis was deposed again on August 1, 1990. He began working for VAMAC in Tennessee in June of 1987 on cross-country trucking routes. At the time of his deposition, he was driving locally in western Tennessee because his knee bothered him on longer journeys. He was taking Feldene, an anti-inflammatory drug, on a daily basis to help reduce the swelling, which is exacerbated by having to use the 18-wheeler's gas pedal.
At trial, Davis testified that, after his surgery, two of his Serv-Tech supervisors, Richard Dupuy and Roger Fontenot, complained to Lebert about his inability to work as effectively as before the surgery. He stated that the surgery alleviated the pain and swelling for a few months. Thereafter, the symptoms got worse and by November, 1985, Dr. Drez recommended further surgery. Davis refused for financial reasons. He was told that he was laid off by Serv-Tech in February, 1986 because he could not perform his job duties.
Davis' testimony was generally corroborated by Lebert and John Ray, his former cross-country driving partner with VAMAC. Lebert observed that Davis' knee swelled greatly since the surgery and gave him difficulty in the performance of his job duties. He did not know why Davis was laid off in February, 1986, although the official termination slip shows "reduction of force" as the reason. Ray stated that, while he drove with Davis, he would have to cover for him by driving more than his share of the hours and assuming more of the loading/unloading duties. He stated that Davis complained of pain daily and took pain medication two to three times a day. According to Ray, Davis' leg is now stiff and he has trouble getting into the back of a trailer.
While the evidence clearly indicates that, after surgery, Davis worked while in pain, it also shows that his employment with Serv-Tech continued for 14 months after recovering from surgery. He also worked for VAMAC in Tennessee for more than five years and, as of the date of trial, was still employed by VAMAC. Although the pain may have affected his ability to properly perform these jobs, the fact remains that he was able to continuously perform his work duties without reaching a level of pain that could be characterized as disabling for purposes of temporary total disability. It is clear that Davis' injury did not produce "... temporary total disability ... to engage in any self-employment or gainful occupation for wages ...". La.R.S. 23:1221(1), supra (Emphasis ours). The fact that he was able to successfully perform these two labor intensive jobs belies the assertion that he is or was temporarily and totally disabled from any employment. Such a disability classification is inconsistent with his extensive postsurgery work history. Based on these observations, we conclude that the trial court clearly erred in finding Davis entitled to temporary total disability benefits.
However, in our view, the record sufficiently establishes Davis' entitlement to SEB pursuant to La.R.S. 23:1221(3) commencing November 8, 1984. Dependant on his postinjury wage when compared to his pre-injury wage, Davis may be entitled to recover SEB for the entire time or certain periods following his injury.
It is well settled that, to qualify for SEB, a claimant must prove by a preponderance of the evidence that a work-related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Tassin v. CIGNA Insurance Co., 583 So.2d 1222 (La.App. 3rd Cir.1991); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991). Once this prima facie case is established, the burden shifts to the employer to show the claimant is physically capable of work and that the work was offered or available in the reasonable geographic region. If the employer meets this *581 burden, it is then incumbent upon the claimant to show, by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii).
SEB are designed to fill the income gap created when, due to injury, an employee is unable to earn 90% of his preinjury wage. It applies to the employee who works a different, lower paying job in the service of his original employer as well as the employee who, due to a lack of sufficient lower-paying job opportunities with his original employer, is forced to work for another employer at less than 90% of his pre-injury wage.
Given the factual record, it is clear that Davis is entitled to SEB for such periods as his post-injury wage was less than 90% of his pre-injury wage. On this issue, the record is factually insufficient for this court to determine if he is entitled to SEB for all or some part of the post-injury period and/or in what amounts. Therefore, we will remand this matter to the trial court for such determination. Additionally, any amount of SEB the trial court may determine Davis is entitled to, from and after November 8, 1984, is to be offset by wages and worker's compensation benefits received by Davis after the injury.

DECREE
For the above and foregoing reasons, we reverse the trial court judgment finding Davis temporarily and totally disabled. We amend the judgment to find Davis entitled to supplemental earnings benefits from and after November 8, 1984 and remand this case to the trial court for a determination of such benefits. In all other respects, the judgment is affirmed.
All costs of this appeal to be paid by defendant-appellant, the Louisiana Insurance Guaranty Association.
AFFIRMED AS AMENDED.