656 So.2d 1115 (1995)
Lynn SIEMSSEN
v.
MANPOWER TEMPORARY SERVICES.
No. 95-CA-80.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
William J. Levenson, James Minge, James Minge & Associates, New Orleans, for plaintiff/appellant Lynn Siemssen.
James J. Kekemor, T.A., Metairie, for defendant/appellee Manpower Temporary Service.
Before BOWES, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Lynn Siemssen, appeals from a judgment dismissing her workers compensation action because of prescription. We affirm.
Plaintiff was employed from 1981 to 1990 by defendant, Manpower Temporary Services. During that time, she held the positions of service representative, office supervisor, office manager and service supervisor. The latter position was a move to make way for Jerry Braud, a branch manager, who would supervise her office, and another office in the area. As branch manager, Braud took on some of the responsibilities of the office manager, which were previously done by plaintiff. The supervisory positions that plaintiff held required training and familiarity with the procedures to follow when an employee suffered, or made a claim for, an on the job injury under workers compensation.
On Saturday, January 5, 1990, plaintiff, her husband, Craig, and her son, John, and several others were rearranging furniture in the Laplace, Louisiana office of defendant in preparation for the arrival of Braud. The home office in Milwaukee, Wisconsin ordered the rearrangement of furniture and provided a layout of the redesigned office. Plaintiff claims that she felt a pain in her neck while moving a desk and said with sarcasm something *1116 like "Now that feels good!". Her husband did not see the incident, but heard her complaint. She told him she pulled a neck muscle and he instructed her to rest. She did not bring it to anyone else's attention because she did not think it was a "big deal". Two days later on Monday, January 8, 1990, plaintiff called in sick. She claimed that she told Braud that she pulled a muscle in her neck while moving a desk during the rearranging of the office and he responded that he would take care of everything. Braud claimed that she only said that she was sick and never mentioned an incident during the move. She returned to work until February 22, 1990. On that date, she awoke with numbness and tingling in her hand. She immediately made an appointment with her orthopedic doctor, Dr. Robert Mimiles, and saw him the next day. He diagnosed a classic case of pinched nerve, after noting her history of pulling a muscle at work. Because her pain was severe, Dr. Mimiles prescribed oral cortisone and a strong pain medication, plus traction at home. After performing the traction, plaintiff's pain worsened and she went to sleep that night on her couch. In the morning, she awoke screaming with pain and unable to get up. After talking to Dr. Mimiles, plaintiff's husband took her to the emergency room. Plaintiff was hospitalized, tests were run and she was referred to a neurosurgeon, Dr. Lucian Miranne. Considering the history given by plaintiff, Dr. Mimiles believed that the incident of furniture moving caused the disc to rupture.
Dr. Miranne recommended surgery for a ruptured cervical disc. While plaintiff was in the hospital, she claims that she discussed injuring her neck when she was moving the desk at work with the doctors, with Braud and with co-workers who visited her. Braud denies this. During the following days, she was informed that she would be receiving her full salary ($838.46 every two weeks) under defendant's short term disability payments program. Surgery was performed and she returned home. After eight weeks, defendant began to pay her salary under the long term disability program, approximately $550 every two weeks.
Plaintiff attempted to return to work in May. She was only able to work six hours per day for three days, but stopped because the pain was too severe. She stated that she could not hold the telephone or sit for long periods. As a result, her doctor withdrew a prior recommendation that she return to work. At this time, she was terminated because defendant stated that they needed a full time employee. During that period, she also saw Dr. John Schumacher, on the request of defendant's insurance company, Crawford and Company, for an evaluation. Plaintiff has not been able to return to work since then, despite being involved in a "Back to Action" program at Touro Hospital and physical therapy.
In November, 1991, Dr. Miranne advised plaintiff to seek other medical advice. She contended that Dr. Miranne stopped seeing her because she obtained an attorney and because the company stopped paying her medical bills. The medical bills had been paid under the company's group medical insurance policy. She saw Dr. Mimiles once again in 1992 and once in 1993 specifically for her neck, although she sought his advice for other problems during that period. The neck complaints continued. Dr. Mimiles believed that there may be another ruptured disc pinching the nerve. However, plaintiff has not pursued the matter because she cannot afford the medical expense.
Plaintiff was a good employee who distinguished herself. She enjoyed her job and stated that she got along well with Braud. During her employment with defendant, she became Chairman of the Education Committee of the Chamber of Commerce, Vice-Chairman, and then Chairman of the River Area Chamber of Commerce, serving two consecutive terms. Plaintiff received commendations from the company president and congratulations on a good review in 1989.
On January 23, 1992, plaintiff filed a claim for workers compensation. The case was heard on April 13, 1994. On the morning of trial, defendant filed a peremptory exception of prescription, which was referred to the merits. Following the hearing, the hearing officer determined that the claim was prescribed.
*1117 On appeal, plaintiff asserts that the claim was not prescribed. She contends that the disability payments made by her employer served to interrupt or suspend prescription on her workers compensation claim because it was an acknowledgement of the debt for workers compensation. She asserts that she was lulled into a false sense of security by defendant who told her that they wanted to handle the matter through disability insurance and indicated that they would see her through her misfortune. She notes that the long term disability payments were two-thirds of her salary, the same amount that she would have been entitled to in Louisiana workers compensation benefits.
Defendant argues that the only time that payments to the worker interrupt prescription is when the employee is paid compensation payments or is paid her salary in lieu of compensation. It contends that sick leave and medical payments do not serve to interrupt prescription.
Under La.R.S. 23:1209(A), a worker's compensation claim is barred unless asserted either one year from the date of the accident or one year from the time the injury develops, when the injury does not result at the time of the accident or does not develop immediately after the accident. In such cases, however, the claim is forever barred unless instituted within two years of the accident. La.R.S. 23:1209(A); Bledsoe v. Willowdale Country Club, 94-234 (La.App. 5th Cir. 9/27/94), 643 So.2d 1302; Holmes v. Baton Rouge Water Works Co., 558 So.2d 629, 631 (La.App. 1st Cir.1990).
The two-year provision in La.R.S. 23:1209(A) is prescriptive and not preemptive. Lester v. Rebel Crane and Service Company, 393 So.2d 674, 676, n. 2 (La.1981). However, prescription can be interrupted by the payment of wages in lieu of compensation when suit is filed within one year of such payment. Id. In addition, interruption may occur "when the employer lulls the employee into a false sense of security and thereby discourages the filing of a lawsuit." Latino v. Binswanger Glass Co., 532 So.2d 960, 962 (La.App. 5th Cir.1988) [citing Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972)]; See also: Bledsoe, 643 So.2d at 1304.
In Davis v. United General Ins. Co., 631 So.2d 572, 577 (La.App. 3rd Cir.1994), the Third Circuit stated:
To prove he was lulled into a false sense of security, a claimant must show that words, actions or inactions on the part of the employer or insurer induced him to withhold suit until his claim prescribed ...
If an injured employee actually earns wages after the accident, they are not considered wages in lieu of compensation and do not interrupt the prescriptive period even if the employee works in pain ... Conversely, the payment of wages in lieu of compensation will interrupt prescription just as compensation payments would ... [citations omitted].
In previous cases, this court has held that "[t]he test to determine if wages were paid in lieu of compensation is whether the wages are actually earned by the employee." Franz v. New Orleans Breakers, Ltd. Partnership, 515 So.2d 1120, 1123 (La.App. 5th Cir.1987); Bledsoe, 643 So.2d at 1304. The burden of proving that the claim is not prescribed is on the claimant. Id.
In this case, plaintiff asserts that defendant lulled her into a false sense of security so that she did not file a claim for the workers compensation until the claim prescribed. She bases this on her testimony that Braud informed her that he would take care of everything. However, Braud denies making the statement. Furthermore, the evidence shows that plaintiff, an intelligent, articulate college graduate, was in a supervisory position for some years, knew the procedures for pursuing a workers compensation claim and knew the difference between workers compensation benefits and disability benefits under a disability insurance program. Plaintiff was aware that she was being paid pursuant to the disability insurance program. The evidence does not show that she believed those disability payments to be "wages in lieu of compensation". Despite her knowledge, she neither requested workers compensation benefits nor questioned defendant's decision to utilize disability payments, as oppossed *1118 to paying her workers compensation. Even after plaintiff was terminated, she failed to question or investigate her rights under the workers compensation. Based on this evidence, we find that the hearing officer did not err in determining that plaintiff's workers compensation claim has prescribed.
Accordingly, the judgment granting the peremptory exception of prescription is hereby affirmed.
Costs of this appeal are to be paid by the appellants.
AFFIRMED.