848 So.2d 143 (2003)
Clifford D. FRAZIER,
v.
DELTIDE FISHING & RENTAL TOOL, INC.
No. 03-CA-53.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
*145 Michael W. Whitehead, Mandeville, LA, for Appellant.
Sammie M. Henry, Johnson, Stiltner & Rahman, Baton Rouge, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Plaintiff, Clifford D. Frazier, appeals from a workers' compensation judgment dismissing his claims against the Defendant, Deltide Fishing & Rental Tool, Inc. We affirm.
The Plaintiff worked for the Defendant as a tool operator and store manager for 14 years. On June 6, 1997, he was employed as a store manager earning $3,500 per month and an extra $325 for each day that he was in the field. On that date, he injured his back while loading oil field tools into a basket. The Plaintiff was seen by Dr. James Fournet who diagnosed him with low back strain and spondylolisthesis at L5-S1. He was told that he could return to light duty work. The Plaintiff continued to work at light duty, earning the same salary.
In August of 1997, the Plaintiff moved to Alabama where he continued to work for the Defendant as a part-time salesman. He was provided a company car, gasoline credit card, and earned $500 per month. This was similar to an arrangement with three other employees of the Defendant. The work arrangement continued until March 1, 2000. According to the Defendant, the Plaintiff was terminated due to "economic necessity."
In August of 1997, while living in Alabama, the Plaintiff began treatment with Dr. John Vanlandingham, an orthopedic surgeon, who referred him to Dr. Peter Szymoniak, an orthopedic surgeon located in Milton, Florida. Dr. Szymoniak saw him on one occasion in either September or October of 1997.
In May of 1998, the Plaintiff was seen on one occasion by Dr. William Crotwell, an independent medical examiner (IME) located in Alabama. Dr. Crotwell's report states that the Plaintiff complained of low back pain radiating into the left hip. Dr. Crotwell noted the Plaintiff's history of a work-related accident resulting in a healed lumbosacral strain. He also noted that the Plaintiff has chronic spondylolisthesis with some degenerative arthritis, which are unrelated to the accident. At the time of Dr. Crotwell's examination, the Plaintiff was "comfortable without having to do any excessive bending or stretching." The doctor also concluded that Plaintiff's pain is related to the spondylolistheses and arthritic changes and not to the work-related injury. Dr. Crotwell noted that the Plaintiff has continued to work since his accident. After reviewing the job description for the work which the Plaintiff was performing when he was injured, he felt that the Plaintiff could return to work without any problems.
On April 27, 1999, Dr. Vanlandingham issued a report concluding that the Plaintiff was totally disabled due to a combination of chronic degenerative disc disease along with chronic back instability. The report stated that the Plaintiff's spondylolisthesis existed from birth and that the degenerative disc disease occurred over time. The doctor concluded that the back strain syndrome and degenerative disc disease were aggravated by his work activities.
Dr. Vanlandingham's report coincided with a claim for workers' compensation benefits filed in Alabama in March of 1999. That case was ultimately dismissed for lack of jurisdiction. The dismissal was *146 affirmed by the Alabama appeal court in December of 2000. On June 19, 2001, the Plaintiff filed a Disputed Claim for Compensation in Louisiana. The case was tried on August 14, 2002. On October 8, 2002, the workers' compensation judge rendered a judgment in favor of the Defendant. He found that the Plaintiff is capable of light duty work, that he was not paid wages in lieu of compensation, and that the his workers' compensation claim was prescribed on its face when it was filed on June 19, 2001.
On appeal, the Plaintiff first contends that the claim was not prescribed, that the trial judge erred in finding that the Plaintiff was not paid wages in lieu of compensation which extended the prescriptive period, and in failing to recognize that the timely filed claim in Alabama interrupted or suspended prescription. Second, the Plaintiff asserts that the trial judge erred in finding that the Plaintiff is capable of light-duty work, contrary to the opinion of his treating physicians. Third, the Plaintiff contends that the trial judge erred in failing to award penalties and attorney's fees because the indemnity benefits were never paid despite repeated demands.

PRESCRIPTION
The Plaintiff filed a reply brief in which he argued that the peremptory exception of prescription is not properly before the Court because the Defendants failed to file a pleading asserting the exception in conformity with La.C.C.P. art. 927 and C.C.P. art. 924. However, the Defendant filed the exception in this Court in response to the Plaintiff's argument. Thus, it is properly before us.
Furthermore, since the record reflects that the Plaintiff was aware of the exception in the trial court and was prepared to and did argue it before the trial court, we need not remand for a hearing on the exception.
La. R.S. 23:1209(A) in part, provides that claims for workers' compensation are forever barred unless a claim is filed within one year after the accident, or the parties have agreed upon the payments to be made. Voluntary payments, or "unearned wages," paid by the employer to the employee can be deducted from compensation payments. La.R.S. 23:1206. These payments are considered "wages in lieu of compensation." Jerich v. New Orleans Saints, 00-1299, p. 4 (La.App. 5th Cir.12/27/00), 776 So.2d. 1283. Prescription is interrupted when wages in lieu of compensation have been paid. If wages are paid in lieu of compensation, a claim for compensation benefits must be filed within one year of such payment. Blanchard v. Tulane Medical Center, 97-1111, p. 3 (La. App. 5th Cir.3/11/98), 708 So.2d 1232, 1233; Siemssen v. Manpower Temporary Services, 95-80, p. 6 (La.App. 5th Cir.5/30/95), 656 So.2d 1115, 1117.
The party pleading prescription generally has the burden of proving it. However, when a suit has prescribed on its face, the claimant has the burden of proving that prescription was interrupted in some manner. Siemssen, 95-80 at p. 6, 656 So.2d at 1117. The test to determine if wages were paid in lieu of compensation is whether the wages are actually earned by the employee. Siemssen, 95-80 at p. 6, 656 So.2d at 1117; Franz v. New Orleans Breakers, Ltd. Partnership, 515 So.2d 1120, 1123 (La.App. 5th Cir.1987).
The Plaintiff had worked in the oilfield since 1951. He was employed by the Defendant for 14 years before his accident. According to the Plaintiff, as store manager, he was responsible for managing the store operations to provide certain oilfield equipment to customers, "running" tools, and making sales calls. He testified that a normal part of the job included going into *147 the field to physically assist another worker in screwing together the pieces of equipment used to "fish" a "hole" for an oil or gas field customer. "Fishing" in oilfield terms relates to a string of drilling pipe set in the ground in the process of drilling an oil or gas well. He claimed that this procedure could last anywhere from 10 to 24 hours and it involved lifting and hooking up heavy pieces of equipment to a crane. The lighter pieces weighed 20 to 40 pounds and the heaviest 1,000 pounds.
The Plaintiff testified that he moved to Alabama because the back pain from the injury prevented him from performing his job duties. He claimed that he did not quit or retire because he could not afford to do so. However, he did apply for and receive social security retirement as soon as he moved. The Plaintiff said that he discussed the move with the operations manager, Jessie Gros (Gros), and agreed to continue working part-time as a salesman, using his contacts in Alabama. The Defendant paid him $500 per month, provided him with a company car and gasoline credit card and also paid his medical insurance. He and Gros hoped the Plaintiff's back would get better and he could return to his job. However, his back pain did not improve, but worsened. He gradually stopped making any outside sales calls, although he continued to phone his contacts in Alabama. After several months, his back pain was so bad that it interfered with his ability to do anything. The Plaintiff stated that he cannot perform his old job because of the physical requirements and the necessary traveling back and forth from sales calls to the office four to five times a day.
Gros, the Vice-President and Treasurer of the company, testified that the Plaintiff worked in the Broussard, Louisiana facility when he was injured. In the past, he had worked in Morgan City, Louisiana and in the Alabama store until it was closed. Gros stated that the Plaintiff was a valuable asset to the company because of his oilfield knowledge and contacts. Gros wanted the Plaintiff to continue working because he was excellent at his job. Gros testified that replacing the Plaintiff was very difficult. He explained that people like the Plaintiff, with long years in the industry are hired for their knowledge and their contacts. They are hired primarily to sell. As store managers, they were neither expected to nor required to perform physical labor and the job is light duty. As an example, one store manager has a serious heart condition and he only comes into the office a few hours each day.
Gros testified that, in addition to selling, the store managers perform administrative duties, including setting up the schedules for the operators who do the physical labor, and the dispatchers. The store managers provide input as to who goes out on a job, order equipment as necessary, lay out the job for the operator, keep the facility painted, and contact the dispatchers when a job is ordered. The dispatcher then sends out the operator. Operators are on call 24 hours, seven days per week. The Plaintiff had two dispatchers and a training operator under his supervision. According to Gros, the Defendant did not want its store managers involved in the physical work. They have others to do that. Rarely would a store manager have to go on a job in the event no operators were available. In those cases, an extra worker would be hired.
Gros testified that he was under the impression that the Plaintiff went back to Alabama because he was going to retire. In order not to lose him completely, he offered him the part-time sales position. The Defendant had this same arrangement with four other employees. The Defendant tries to keep the experienced workers *148 on the payroll because of who they know. One contact can generate a million dollar job, so it is worth it to keep these salesmen on the payroll. Gros stated that there is no paper trail or tracking method to determine what salesman generated which job because the jobs are ordered directly from the Defendant's office, not by the salesman as in other industries and may arrive some time after the contact. In addition, more that one salesman are in the field developing relationships that hopefully will generate business in the future. For example, a job order initiated in Houston could have been the result of any one of the salesmen's efforts, even the Plaintiff's in Alabama. Gros explained that is how oilfield sales work. In addition, Gros stated that these employees are not paid commissions, although they do get reimbursed for expenses. Gros stated that the Defendant would only know that the Plaintiff had stopped working if the Plaintiff told someone at the company. Since he did not, he was kept on the payroll until he was terminated in February of 2000 due to the financial condition of the Defendant, which was still feeling the effects of the downturn in the industry. The Defendant would have terminated the Plaintiff sooner if it knew that he had stopped working.
David Ruttley, the Defendant's Operations Manager, testified that he oversees the store managers, giving technical support and assistance with decisions. He participated in formulating the store manager job description. He stated that it is a light duty job that does not require lifting or exertion over 20 pounds, and that the store managers are not supposed to do the physical work. Ruttley claimed that the Plaintiff specifically telephoned him to tell him that he was going back to Alabama and intended to retire because he was tired, not because of his back injury.
The manifest error standard of review applies to factual findings in a workers' compensation case. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Scuderi v. Crazy Johnnie Cafe, Inc., 02-243. p. 4 (La.App. 5th Cir.10/16/02), 831 So.2d 1037, 1040. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Chaisson, 97-1225 at p. 13; 708 So.2d at 380; Scuderi, 02-243 at p. 4, 831 So.2d at 1040. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Gray v. H.B. Zachary Const. Co., 01-276, p. 6 (La.App. 5th Cir.9/25/01), 798 So.2d 271, 274; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice of them can never be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at p. 14, 708 So.2d at 381; Scuderi, 02-243 at p. 4, 831 So.2d at 1040. Thus, if the factfinder's findings are reasonable in light of the record, the court of appeal may not reverse or modify the judgment. Chaisson, 97-1225 at p. 14, 708 So.2d at 381; Scuderi, 02-243 at p. 4, 831 So.2d at 1040-1041.
In this case, the issue of prescription depends on whether the trial judge was clearly wrong in determining that the wages paid to the Plaintiff after he moved to Alabama were in lieu of compensation or indemnity benefits. The Plaintiff did not dispute that, after he moved, he originally earned wages as a part-time salesman. He claims however, that he was gradually unable to perform this light work and supports this with Dr. Vanlandingham's *149 report sent to the Plaintiff's counsel in April of 1999 in the Alabama suit. Dr. Crotwell concluded otherwise the previous year. We recognize that the Defendant would have been aware of that letter because of the Alabama lawsuit, but the Defendant's witnesses thought he was still making calls because he did not tell them that he had stopped working. The workers' compensation judge found the Defendant's witnesses credible. Based on all of the evidence, we find that the workers' compensation judge was not clearly wrong in concluding that the wages were not paid in lieu of compensation as they were earned. As a result, the claim filed in Alabama had prescribed when it was filed and cannot interrupt prescription. Thus, the claim filed in Louisiana is also prescribed. Because we find that the Plaintiff's action is prescribed, we pretermit discussion of the other issues.
Accordingly, the workers' compensation judgment which dismisses Plaintiff's claims against the Defendant is affirmed. Costs of this appeal are to be paid by the Plaintiff.
AFFIRMED.