STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**05-1211**


ROBERT WEINGARTNER

VERSUS

LOUISIANA ICE GATORS


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION,
DISTRICT 4, NO. 01-06629 C/W 03-1966
HONORABLE SHARON MORROW,
ADMINISTRATIVE HEARING OFFICER, PRESIDING


**********

J. DAVID PAINTER
JUDGE
**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART**.

Pickett, J. dissents and assigns written reasons.
Thibdeaux, Chief Judge, dissents for the reasons assigned by Judge Pickett.

John J. Rabalais
Janice B. Unland
Robert T. Lorio
Thomas B. Delsa
5100 Village Walk, Ste. 300
Covington, LA 70433
Attorney for Plaintiff-Appellant:
    Louisiana Ice Gators

Robert L. Hackett
202 Lakes Drive
Atlanta, GA 30339
Attorney for Defendant-Appellee:
    Robert Weingartner

PAINTER, Judge.

Appellant, the Louisiana Ice Gators ("the Team"), a professional hockey team, appeals the ruling of the Office of Workers' Compensation awarding temporary total disability ("TTD") benefits and supplemental earnings benefits ("SEB") to Robert Weingartner. Weingartner answers the appeal asking for benefits for an increased period, an increased benefit for scarring, and penalties and attorney's fees.

The Workers' Compensation judge ("WCJ") correctly outlined the underlying facts of this case, in her reasons for judgment, as follows:

> Robert Weingartner was employed with the Louisiana Ice Gators ("Ice Gators") as a professional hockey player. On May 9, 2000 while playing in a game, the puck went behind the net. Weingartner went behind the net and an opponent put his hockey stick between Weingartner's legs and pushed him into the ledge. Weingartner was sent for medical treatment immediately after the game to have a cut over his left eye stitched up. The team doctor referred him to a neurologist. He was seen by Dr. Patrick Juneau III, a neurosurgeon, on May 10. Due to Weingartner's long history of concussions, Dr. Juneau believed him to be at increased risk for concussive episodes and advised Weingartner to retire.

> Weingartner retired from professional hockey upon Dr. Juneau's advice. After his retirement he did various jobs. He coached children's league ice hockey and roller hockey, he operated a small lawn care business, and managed a condominium complex. He and his family eventually moved to Witchita (sic), Kansas where he obtained employment with Goddard Middle School as a custodian.

Weingartner filed a disputed claim for compensation on September 7, 2001. After a hearing, the WCJ rendered judgment in favor of Weingartner granting temporary total disability benefits in the amount of $384.00 per week from May 9, 2000 through December 1, 2000 and supplemental earnings benefits beginning December 2, 2000 and to continue as long as they are due. She also awarded twenty weeks of benefits for scarring and disfigurement at $384.00 per week. She ordered that the TTD benefits and SEB be subject to a credit for sums paid in lieu of

1

compensation, including fringe benefits, from May 10, 2000 through October 12, 2000, a credit for the twenty weeks awarded for scarring and disfigurement, and a credit for income earned after May 9, 2000, less actual business expenses of self-employment as evidenced by the income tax returns. The judgment further noted that Weingartner is entitled to any medical treatment for his post-concussive syndrome that is reasonable and necessary. Both Weingartner and the Team assert error on the part of the WCJ.[1]

DISCUSSION

*Prescription*

The Team asserts that the claim for indemnity benefits is prescribed because the payments made to Weingartner through October 12, 2000 were earned under his contract rather than being wages in lieu of compensation, which would have served to interrupt or suspend prescription. La.R.S. 23:1209(A) (footnote omitted) provides, in pertinent part, that:

> In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment . . .

It is uncontested that Weingartner was injured on May 9, 2000. Weingartner's testimony shows that the Ice Gators' final game of that hockey season was to occur on May 26, 2000. It is undisputed that Weingartner continued to receive his salary

---

[1] We note that the Team has not assigned error with regard to the medical treatment ordered in the judgment. Therefore, that portion of the judgment is not before this court.

from the time of his injury through October 12, 2000. The trial court found that those payments were wages in lieu of compensation.

> La. R.S. 23:1209(A) in part, provides that claims for workers' compensation are forever barred unless a claim is filed within one year after the accident, or the parties have agreed upon the payments to be made. Voluntary payments, or "unearned wages," paid by the employer to the employee can be deducted from compensation payments. La.R.S. 23:1206. These payments are considered "wages in lieu of compensation." *Jerich v. New Orleans Saints*, 00-1299, p. 4 (La.App. 5th Cir.12/27/00), 776 So.2d. 1283. Prescription is interrupted when wages in lieu of compensation have been paid. If wages are paid in lieu of compensation, a claim for compensation benefits must be filed within one year of such payment. *Blanchard v. Tulane Medical Center*, 97-1111, p. 3 (La.App. 5th Cir.3/11/98), 708 So.2d 1232, 1233; *Siemssen v. Manpower Temporary Services*, 95-80, p. 6 (La.App. 5th Cir.5/30/95), 656 So.2d 1115, 1117.

*Frazier v. Deltide Fishing & Rental Tool, Inc.*, 03-53, pp. 4-5 (La.App. 5 Cir. 5/28/03), 848 So.2d 143, 146.

The Team asserts that the payments were earned under the contract but paid in prorated fashion, as agreed by Weingartner at the time he signed his contract with the Team, over a twelve month period. The contract was not introduced into evidence. Weingartner supplied the only testimony concerning the terms of his employment under the contract. Weingartner's testimony with regard to his contract was as follows:

> When I arrived in town, I had a meeting with the general manager [of the Ice Gators]. His name is J.D. Regard. I sat down at his desk. He -- we talked about a contract, and he offered me Four Hundred and -- I believe it was Four Hundred and Fifty Dollars a week. And I told him, I said, you know -- I said, "Wait a second. I was just playing for an Eight Hundred Dollar a week contract. There's no way that I'm going to play, you know, in my eighth year professional, I'm going to take that much of a pay cut." So he -- I told him I had -- you know, I explained my whole contract, which I said earlier, about the Eight Hundred Dollars a week and all the extra things I was getting, so he went ahead and said, "Okay, we'll put you at -- "I believe it was Four Fifty or Four Sixty-Five for a year-round contract, so I would get paid, basically, double the time that I had been there in order to make up for the difference in pay. There

3

was a salary cap at the time, and they had a lot of older players, what we call veteran players, which are -- who have played two hundred games or more -- so he didn't have the Eight Hundred Dollars a week. So he agreed to pay me the Four Sixty-Five for double [the] amount of time, or a year-round contract which would've ended in October. October 12th. Around there.

Considering this testimony, we find that the money paid to Weingartner after the end of the season was earned during the season. Therefore, the payments cannot be considered wages in lieu of compensation. As a result, prescription was not interrupted by these payments, and Weingartner's claim for indemnity benefits is prescribed.

Having so found, we need not consider the remaining assignments of error. Although Weingartner's brief on appeal suggests that he may be asking for penalties and attorney's fees for failure to pay for dental care claimed pursuant to an earlier compensation claim filed under Office of Workers' Compensation docket number 03-1966, the judgment appealed from does not pertain to that claim. Therefore, the claims raised therein are not before this court.

CONCLUSION

For these reasons, the judgment of the trial court concerning indemnity benefits is reversed. Weingartner's claim for workers' compensation indemnity benefits arising out of his accident of May 9, 2000 is dismissed. That portion of the judgment concerning medical treatment is affirmed. Costs of this appeal are to be paid by the Appellee, Robert Weingartner.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

NUMBER 05-1211

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ROBERT WEINGARTNER

VERSUS

LOUISIANA ICE GATORS

**Pickett, Judge, dissenting.**

For the following reasons, I disagree with the majority opinion.

The majority finds that the money paid Mr. Weingartner between the time he was injured and the end of his contract, October 12, 2000, did not interrupted the tolling of prescription. I disagree. This case is very similar to the factual situation in *Jerich v. New Orleans Saints*, 00-1299 (La.App. 5th Cir.12/27/00), 776 So.2d. 1283. In *Jerich*, the claimant was a professional football player employed by the New Orleans Saints. Jerich injured his knee in June of 1997. During the 1997 football season, Jerich was paid his entire basic contract amount but performed no services as a professional football player. In *Jerich* the court stated:

> The running of prescription is suspended where the employer is paying the injured worker wages in lieu of compensation. *Causby v. Perque Floor Covering*, 97-1235 (La.1/21/98), 707 So.2d 23, 28 n. 4; *Blanchard v. Tulane Medical Center*, 97-1111 (La.App. 5 Cir. 3/11/98), 708 So.2d 1232, 1233.

> The OWC judge made the following findings of fact in her reasons for judgment:

> The testimony and the evidence corroborate that the claimant's last payment of benefits was in 1998, pursuant to the grievance settlement. The claimant did not work in 1998. The claimant did not perform duties as a professional football player while receiving his salary. He had multiple surgeries on his knee and he failed the team physical in 1998, so he could not play. He was paid

1

($55,500.00) in the settlement. *The claimant therein did not earn his salary, he was paid pursuant to the contractual agreement. Therefore, he was paid wages in lieu of compensation.*

Thus, the court held that the filing of the claim in June 1998 had not prescribed because it was within one year of the payment of the settlement.

The parties stipulated that plaintiff received *payment of his contract* for the 1997 season. The OWC judge determined that payment *was wages in lieu of compensation and*, therefore, held that it *interrupted prescription on the claim*. On appeal defendants assert that, although plaintiff did not play during either the 1997 season and or the 1998 season, the payment of the contract amount to plaintiff was earned wages.

*Id*. at 1285-86 (emphasis mine). In this case, Mr. Weingartner received *payment of his contract* between the time he was injured and the end of the contract period, October 12, 2000. The facts establish that Mr. Weingartner was paid his entire contract amount, yet he performed no services as a professional hockey player after his injury. Just as Jerich. Additionally, had Mr. Weingartner filed for indemnity benefits immediately after his accident he would have lost money. I believe that the court must look at the intent of the Workers' Compensation Statutes, the liberal rule of construction which must be accorded the Workers' Compensation Statutes, and also take into consideration the unique character of employment of professional athletes (contracts, non-monetary compensation, etc.) as did our colleagues of the fifth circuit in *Jerich*.

Additionally, this court has recognized that an employer cannot continue to pay an employee his regular salary and then, subsequently, use that practice to avoid its responsibility under the Workers' Compensation Statutes. See *Monceaux v. R & R Constriction, Inc.*, 05-533 (La.App. 3 Cir. 12/30/05), 919 So.2d 795.

Further, it is well settled "that an employer and/or insurer who lulls the injured employee into a false sense of security, thus inducing forbearance in the prosecution

2

of a compensation claim is estopped to plead prescription to the injured employee's untimely suit." *Williams v. William Wrigley, Jr., Co.*, 94-370 (La.App. 5 Cir. 11/16/94), 646 So.2d 1092, *writ denied*, 95-0373 (La. 4/7/95), 652 So.2d 1346. If the payment of one's full salary, following an injury doesn't qualify as lulling an injured employee into a false sense of security, what does?

According, for the reasons stated above, I respectfully dissent.